In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2540

UNITED STATES OF AMERICA

*Plaintiff-Appellee*,

*v.*

GREGORIO PANIAGUA-GARCIA,

*Defendant-Appellant*.

Appeal from the United States District Court for the
Southern District of Indiana, Terre Haute Division.
No. 2:14-cr-00027-JMS-CMM-01 — **Jane E. Magnus-Stinson**, *Judge*.

ARGUED JANUARY 27, 2016 — DECIDED FEBRUARY 18, 2016

Before POSNER, KANNE, and HAMILTON, *Circuit Judges*.

POSNER, *Circuit Judge*. An Indiana statute forbids drivers to use a telecommunications device (normally a cellphone) to type, transmit, or read a text message or an electronic-mail message, Ind. Code § 9-21-8-59(a)—in short it prohibits "texting" (sending or receiving textual material on a cellphone or other handheld electronic device; also called "text messaging" or "wireless messaging") or emailing while operating a motor vehicle. *All* other uses of cellphones by drivers are al-

lowed, Joel M. Schumm, "Recent Developments in Indiana Criminal Law and Procedure," 45 *Indiana L. Rev.* 1067 (2012): making and receiving phone calls, inputting addresses, reading driving directions and maps with GPS applications, reading news and weather programs, retrieving and playing music or audio books, surfing the Internet, playing video games—even watching movies or television. Most of these activities seem dangerous—though no more so, and maybe less so, than texting—and because a driver is more likely to engage in one or more of them than in texting, see J. Tison, N. Chaudhary, & L. Cosgrove, *National Highway Traffic Safety Administration, National Phone Survey on Distracted Driving Attitudes and Behaviors* 4 (Report No. DOT HS 811 555) (2011), the most plausible inference from seeing a driver fiddling with his cellphone is that he is *not* texting.

An Indiana police officer, in the course of passing a car driven by Gregorio Paniagua-Garcia (whom for the sake of brevity we'll call just Paniagua) on an interstate highway, saw that the driver was holding a cellphone in his right hand, that his head was bent toward the phone, and that he "appeared to be texting." Paniagua denies that he was texting, the officer has never explained what created the appearance of texting as distinct from any one of the multiple other—lawful—uses of a cellphone by a driver, and the government now concedes that Paniagua was *not* texting—that as he told the officer he was just searching for music. An examination of his cellphone revealed that it hadn't been used to send a text message at the time the officer saw him fussing with the cellphone.

Almost all the lawful uses we've listed would create the same appearance—cellphone held in hand, head of driver

bending toward it because the text on a cellphone's screen is very small and therefore difficult to read from a distance, a finger or fingers touching an app on the cellphone's screen. No *fact* perceptible to a police officer glancing into a moving car and observing the driver using a cellphone would enable the officer to determine whether it was a permitted or a forbidden use. See *State v. Rabanales-Ramos*, 359 P.3d 250, 256 (Ore. App. 2015).

The officer pulled over Paniagua, questioned him at length, eventually asked and received Paniagua's permission to search the car, and discovered in the search five pounds of heroin concealed in the spare tire in the car's trunk. Paniagua was prosecuted in federal court for possession of the heroin, and though the police officer was mistaken in thinking that Paniagua had been texting when the officer drove by and saw him holding the cellphone, the district judge ruled that the officer had reasonably believed that Paniagua was texting.

Paniagua pleaded guilty to possession of heroin intending to distribute it and was sentenced to 36 months' imprisonment. But he reserved the right to appeal the denial of his motion to suppress the evidence of the heroin. He argued that it had been discovered by an illegal stop, amounting to a seizure of his person. The government concedes that the traffic stop constituted a seizure and therefore was lawful under the Fourth Amendment (held applicable to state officers by interpretation of the Fourteenth Amendment) only if the officer had probable cause to believe that a traffic violation had occurred or reasonable suspicion that a crime was about to be or had been committed. See *Whren v. United States*, 517 U.S. 806, 810 (1996); *Navarette v. California*, 134 S.

Ct. 1683, 1687 (2014). The government failed to establish that the officer had probable cause or a reasonable suspicion that Paniagua was violating the no-texting law. The officer hadn't seen any texting; what he had seen was consistent with any one of a number of lawful uses of cellphones. The government presented no evidence of what percentage of drivers text, and is thus reduced to arguing that a mere possibility of unlawful use is enough to create a reasonable suspicion of a criminal act. But were that so, police could always, without warrant or reasonable suspicion, search a random pedestrian for guns or narcotics. For it would always be *possible* that the pedestrian was a bank robber, a hired killer on the loose, a drug lord or drug addict, or a pedophile with child pornography on his thumb drive. "A suspicion so broad that [it] would permit the police to stop a substantial portion of the lawfully driving public … is not reasonable." *United States v. Flores*, 798 F.3d 645, 649 (7th Cir. 2015); see also *Reid v. Georgia*, 448 U.S. 438, 441 (1980); *Delaware v. Prouse*, 440 U.S. 648, 662 (1979); *United States v. Thompson*, 772 F.3d 752, 758–60 (3d Cir. 2014).

The government appears to recognize no limit to the grounds on which police may stop a driver. It says the officer's suspicion must be reasonable but offers no example of unreasonable suspicion and cites no evidence to support a finding of reasonable suspicion in this case. What it calls reasonable suspicion we call suspicion. Suppose the officer had observed Paniagua drinking from a cup that appeared to contain just coffee. Were the coffee spiked with liquor in however small a quantity, Paniagua would be violating a state law forbidding drinking an alcoholic beverage while driving, and that possibility, however remote, would on the

reasoning advanced by the government and adopted by the district judge justify stopping the driver.

Against this comparison the government argues that "in the case of drunk driving, by contrast [to texting], erratic movements, speed changes, and other conduct would typically be part of the assessment of the reasonableness of an officer's suspicion," and therefore "it would be unreasonable in certain cases to suspect drinking and driving when observing a driver drinking from an unmarked cup, but it is always reasonable to suspect texting while driving when observing a driver typing on and looking at a phone." In saying this the government (the federal government, remember) reveals confusion about Indiana law, which does not merely forbid driving while drunk; it forbids *any* consumption of alcohol while driving. Ind. Code § 9-30-15-4. Just as it's possible to text without being seen to text, it is possible to consume alcohol without being observed to have done so and without having become intoxicated as a result.

Consider now that some drivers don't have a driver's license, or their license has expired. The logic of the government's position is that either possibility, however slight, justifies the police officer in suspecting that the driver is not authorized to drive and in ordering him to pull over.

Surprisingly—for it is a blatant contradiction to its argument for affirmance—the government states "that a traffic stop such as the one at the heart of this case is a 'seizure,' which must comport with the Fourth Amendment." But this means that in the absence of compelling circumstances, none present in this case, a traffic stop for a traffic violation must be based on probable cause, and in this case it was not.

Indiana is right to be worried about the dangers created by persons who fiddle with their cellphones while driving, but probably wrong to outlaw such fiddling only with respect to texting—if only because the effect of slicing up drivers' use of cellphones in this way has been to make the Indiana statute largely inefficacious, such is the difficulty of distinguishing texting from other uses of cellphones by drivers by glancing into the driver's side of a moving automobile. The contrast with Illinois, which has a "hands-free" law, 625 ILCS 5/12-610.2 (a driver is forbidden to use a cellphone with his hands, as distinct from using bluetooth or other technologies that enable the driver to communicate without manipulating his cellphone), is striking. For while in 2013 only 186 citations were issued for violations of the Indiana texting law, more than 6700 citations were issued in Illinois for violations of the Illinois hands-free law. (These figures are from Zach Myers, "Texting Tickets: Police Unable to Enforce Indiana's Texting and Driving Law," *FOX 59*, May 21, 2014, http://fox59.com/2014/05/21/3-years-later-police-say-indianas-texting-and-driving-law-remains-unenforceable/ (visited February 16, 2016).)

REVERSED AND REMANDED