2016 ND 117

**STATE of North Dakota, Plaintiff and Appellant**

v.

**John Immanuel HIRSCHKORN, Defendant and Appellee.**

**No. 20160003.**

Supreme Court of North Dakota.

June 30, 2016.

Ladd R. Erickson, State's Attorney, Washburn, ND, for plaintiff and appellant; submitted on brief.

Lloyd C. Suhr, Bismarck, ND, for defendant and appellee; submitted on brief.

VANDE WALLE, Chief Justice.

[¶ 1] The State appealed a district court order suppressing evidence obtained from a traffic stop of John Hirschkorn. We reverse and remand.

## I

[¶ 2] Hirschkorn moved to suppress evidence obtained in a traffic stop resulting in his arrest for driving under the influence. According to testimony at the suppression hearing, a McLean County Sheriff's deputy responded to reported drug use in a Turtle Lake alley. The deputy testified the alley was paved and maintained by the City of Turtle Lake. A second deputy testified the alley was paved and gravel in part, but was nonetheless public. Upon surveiling the area, the first deputy testified to observing a vehicle exit the alley without signaling before turning. Believing this failure was a traffic violation, the deputy radioed the second deputy to stop the vehicle. After executing the stop, the second deputy arrested Hirschkorn.

[¶ 3] Hirschkorn moved to suppress evidence obtained from the stop, arguing no reasonable suspicion justified the stop because the law does not require drivers to signal prior to exiting alleys. Following the suppression hearing, the district court found the first deputy "observed a pickup emerge from an alley without using a turn signal." After noting drivers must generally signal before turning, the court also noted the statutory section specifically regulating driver conduct while exiting alleys does not contain this requirement. The court found this specific section, and its lack of a requirement to signal, took precedence over the general requirement to signal, meaning drivers do not have to signal prior to exiting alleys. Because Hirschkorn's failure to signal was not a traffic violation, the district court concluded no reasonable suspicion justified the traffic stop. The court accordingly suppressed evidence resulting from the stop.

## II

[¶ 4] On appeal, the State argues the district court erred in suppressing evi-

dence from the traffic stop because the court misinterpreted the law by concluding the law does not require drivers to signal prior to exiting alleys. "Questions of law and the ultimate conclusion about whether the facts support a reasonable and articulable suspicion are fully reviewable on appeal." *State v. Smith*, 2005 ND 21, ¶ 11, 691 N.W.2d 203.

### A

[¶ 5] As presented by the parties, this appeal concerns interpreting whether drivers must signal prior to exiting alleys. Statutory interpretation is a question of law fully reviewable on appeal. *VND, LLC v. Leevers Foods, Inc.*, 2003 ND 198, ¶ 9, 672 N.W.2d 445. Various canons of statutory construction guide our interpretation of the statutes at issue here. Words in a statute are given their plain, ordinary, and commonly understood meaning unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1–02–02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1–02–07. "Words and phrases must be construed according to the context and the rules of grammar and the approved usage of the language." N.D.C.C. § 1–02–03.

[¶ 6] Chapter 39–10, N.D.C.C., governs "the operation of vehicles upon highways or other places open to the public for the operation of vehicles...." N.D.C.C. § 39–10–01(1). Highways generally include "every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel...." N.D.C.C. § 39–01–01(29). Within N.D.C.C. ch. 39–10, statutory provisions regulating highways generally apply "except when a different place is specifically referred to in a given section." N.D.C.C. § 39–10–01(1).

[¶ 7] Under N.D.C.C. § 39–10–38(1), no "person may turn a vehicle or move right or left upon a roadway unless and until such movement can be made with reasonable safety without giving an appropriate signal...." Chapter 39–10, N.D.C.C., defines a roadway as "that portion of a highway improved, designed, or ordinarily used for vehicular travel, exclusive of the berm or shoulder." N.D.C.C. § 39–01–01(73). Reading these two provisions and the definition of highway at N.D.C.C. § 39–01–01(29) together, no person may turn a vehicle or move right or left upon that portion of a publicly maintained way improved, designed, or ordinarily used for vehicular travel without giving an appropriate signal. In addition, N.D.C.C. § 39–10–45 governs driver conduct while exiting alleys, providing:

> The driver of a vehicle emerging from an alley ... shall stop such vehicle immediately prior to driving onto a sidewalk or onto the sidewalk area extending across such alley ... or in the event there is no sidewalk area, shall stop at the point nearest the street to be entered where the driver has a view of approaching traffic thereon.

Accordingly, under these provisions, drivers on roadways must signal prior to turning or moving their vehicles and must stop at statutorily prescribed distances prior to exiting alleys.

[¶ 8] According to Hirschkorn, N.D.C.C. § 39–10–38(1) does not apply to drivers exiting alleys because generally applicable laws, such as N.D.C.C. § 39–10–38(1), do not apply "when a different place is specifically referred to in a given section." N.D.C.C. § 39–10–01(1). Because N.D.C.C. § 39–10–45 specifically refers to alley exits, Hirschkorn argues N.D.C.C. § 39–10–45 operates to the exclusion of N.D.C.C. § 39–10–38(1). Thus, Hirschkorn argues his failure to signal was not a traffic violation because N.D.C.C. § 39–10–45 contains no signaling requirement. In

its order, the district court agreed with this interpretation.

[¶ 9] We agree with the State's argument Hirschkorn and the district court misinterpreted the law. As a principle of statutory construction, we must construe related statutes as consistent with one another so as to effectuate both unless the statutes are irreconcilable. N.D.C.C. § 1–02–07. Under a concerted, harmonious interpretation, N.D.C.C. § 39–10–45 supplements rather than supplants N.D.C.C. § 39–10–38(1). Read together, N.D.C.C. § 39–10–38(1) and N.D.C.C. § 39–10–45 require drivers to stop at specific distances before exiting alleys in addition to, but not exclusive of, requiring drivers on roadways to signal when appropriate. With his argument, Hirschkorn invites us to read disharmony into N.D.C.C. § 39–10–45 and N.D.C.C. § 39–10–38(1) when none exists.

[¶ 10] Extending the reasoning underlying Hirschkorn's interpretation, N.D.C.C. § 39–10–45 would create a broad exception to general requirements set forth under N.D.C.C. ch. 39–10 for drivers exiting alleys because, like the signaling requirement at N.D.C.C. § 39–10–38(1), other requirements are also not delineated at N.D.C.C. § 39–10–45. Other statutory provisions reveal this interpretation is misplaced. For instance, N.D.C.C. § 39–10–14(2) and N.D.C.C. § 39–10–15(3) specifically allow drivers to drive on the left side of the road and in no passing zones, respectively, when turning into or from an alley, contrary to general requirements forbidding such conduct. If Hirschkorn's interpretation controlled, there would be no need to specifically exempt drivers exiting alleys under these circumstances because N.D.C.C. § 39–10–45 would already have exempted drivers from such requirements. We cannot conclude the legislature intended for N.D.C.C. § 39–10–14(2), N.D.C.C. § 39–10–15(3), and other related

provisions to be redundant, which is the necessary result of Hirschkorn's argument. Furthermore, the legislature's failure to exempt drivers from the requirement to signal while exiting alleys when it specifically exempted drivers exiting alleys from other requirements is an indication of its intent not to do so with the signaling requirement. See Trade 'N Post, L.L.C. v. World Duty Free Americas, Inc., 2001 ND 116, ¶ 23, 628 N.W.2d 707 (stating "[w]hen a statute that fails to expressly provide a private right of action is flanked by a related statute that does expressly create such a remedy, it is an indication the legislature did not intend to create a private right of action by implication."). These statutory provisions render Hirschkorn's interpretation unavailing.

[¶ 11] In addition to the foregoing, "[w]e construe statutes to avoid absurd or illogical results." Blomdahl v. Blomdahl, 2011 ND 78, ¶ 10, 796 N.W.2d 649. Just as N.D.C.C. § 39–10–45 does not require drivers to signal while exiting alleys, N.D.C.C. § 39–10–45 does not require drivers to obey, for example, lawful orders or directions from police officers, as required by N.D.C.C. § 39–10–02, or traffic-control devices, as required by N.D.C.C. § 39–10–04. Under Hirschkorn's interpretation, drivers exiting alleys would not be required to abide by either because neither appears in N.D.C.C. § 39–10–45. The same reasoning would also exempt drivers from a litany of other statutory requirements also not set forth at N.D.C.C. § 39–10–45. We decline to adopt an interpretation resulting in alley exits becoming, in effect, unregulated thoroughfares not subject to N.D.C.C. ch. 39–10. Accordingly, we interpret N.D.C.C. § 39–10–38(1) as requiring drivers to signal prior to exiting alleys when such alleys qualify as roadways under N.D.C.C. § 39–01–01(73).

[¶ 12] Under the testimony presented at the suppression hearing, the alley clearly qualified as a roadway. In summation, testimony established the alley was paved and gravel in part, opened for public use, and maintained by the City of Turtle Lake. Under these circumstances, the alley was a publicly maintained way improved, designed, or ordinarily used for vehicular travel, requiring Hirschkorn to signal prior to exiting the alley. According to the district court, Hirschkorn "emerge[d] from an alley without using a turn signal." Because the deputy observed Hirschkorn fail to signal when exiting an alley qualifying as a roadway, Hirschkorn committed a traffic violation giving the deputy the reasonable suspicion necessary to justify the traffic stop. On this basis, the traffic stop was proper and the district court erred in suppressing evidence obtained therefrom.

### B

[¶ 13] Even if we were to agree with Hirschkorn's interpretation, the district court erred in suppressing evidence obtained in the traffic stop. At the district court and on appeal, the parties presented this case as one of statutory interpretation. But, statutory interpretation is secondary to the controlling issue of whether the deputy had reasonable suspicion Hirschkorn committed a traffic violation. We have said:

> As automobile stops constitute seizures, officers must have at least a reasonable suspicion that the motorist has violated the law or probable cause to believe the motorist has done so. Reasonable suspicion exists when a reasonable person in the officer's position would be justified by some objective manifestation to suspect potential criminal activity. It is well settled, traffic violations, even if considered common or minor, constitute prohibited conduct which provide officers with requisite suspicion for conducting investigatory stops.

*State v. McLaren*, 2009 ND 176, ¶ 9, 773 N.W.2d 416 (internal citations and quotations omitted). This objective standard of reasonable suspicion is not contingent upon an officer's actual motivation for stopping a vehicle. *State v. Loh*, 2000 ND 188, ¶ 10, 618 N.W.2d 477 (noting "[t]raffic violations provide a proper basis for stops, even if pretextual, and evidence discovered during such stops is admissible.").

[¶ 14] Whether a driver committed a traffic violation does not control whether an officer had the reasonable suspicion necessary to justify a traffic stop. Although not addressed by the parties, an officer's objectively reasonable mistake, whether of fact or law, may provide the reasonable suspicion necessary to justify a traffic stop. In *Heien v. North Carolina*, —— U.S. ——, 135 S.Ct. 530, 190 L.Ed.2d 475 (2014), the United States Supreme Court held an officer's objectively reasonable mistake of fact or law may provide the reasonable suspicion necessary to justify a traffic stop, stating:

> Reasonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law. The officer may be reasonably mistaken on either ground. Whether the facts turn out to be not what was thought, or the law turns out to be not what was thought, the result is the same: the facts are outside the scope of the law. There is no reason, under the text of the Fourth Amendment or our precedents, why this same result should be acceptable when reached by way of a reasonable mistake of fact, but not when reached by way of a similarly reasonable mistake of law.

*Id.* at 536. Where an officer makes a mistake, whether of fact or law, such mis-

take may provide the reasonable suspicion justifying a traffic stop only when objectively reasonable because the "Fourth Amendment tolerates only *reasonable* mistakes...." *Id.* at 539 (emphasis contained in original).

[¶ 15] By litigating this case on the issue of statutory interpretation, the parties sought to adjudicate the criminality of Hirschkorn's failure to signal. If the deputy's interpretation was mistaken, Hirschkorn could not have been convicted for his failure to signal—even if the deputy's belief was objectively reasonable—because Hirschkorn's failure to signal would not have been a traffic violation. However, the deputy's same mistaken interpretation could justify stopping Hirschkorn's vehicle if the interpretation was objectively reasonable. As the Supreme Court stated: "just because mistakes of law cannot justify ... the imposition ... of criminal liability, it does not follow that they cannot justify an investigatory stop." *Id.* at 540. Thus, the criminality of Hirschkorn's failure to signal is relevant in determining whether reasonable suspicion existed only insofar as it plays into the analysis of whether the deputy's interpretation was objectively reasonable.

[¶ 16] We have little difficulty in concluding the deputy's belief the law requires drivers to signal prior to exiting alleys was objectively reasonable under these circumstances. Prior to this case, we had not interpreted the extent and interplay of the various statutory provisions contained in N.D.C.C. ch. 39–10, with respect to the issue in this case. A plain reading of N.D.C.C. § 39–10–38(1) requires drivers signal prior to moving or turning on roadways. To the extent Hirschkorn's interpretation has merit, it relies on a melded reading of N.D.C.C. § 39–10–01(1) with N.D.C.C. § 39–10–45 to trump N.D.C.C. § 39–10–38(1), illustrating the statutory complexity confronting the deputy in determining whether to stop Hirschkorn. Even if assumed to be incorrect, we cannot say the deputy's "sloppy study of the laws he is duty-bound to enforce" caused this belief. *Heien,* 135 S.Ct. at 539–40. The district court erred in suppressing evidence obtained from the traffic stop because the deputy's belief the law required drivers to signal prior to exiting alleys was objectively reasonable, giving the deputy the reasonable suspicion necessary to justify the traffic stop.

### III

[¶ 17] We do not address the other arguments raised because they are either unnecessary to this decision or are without merit. We reverse the district court's order suppressing evidence obtained in the traffic stop and remand for further proceedings consistent with this opinion.

[¶ 18] CAROL RONNING KAPSNER, LISA FAIR McEVERS, DALE V. SANDSTROM and DANIEL J. CROTHERS, JJ., concur.