# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 84

State of North Dakota,                                        Plaintiff and Appellee

v.

Travis James Morsette,                                      Defendant and Appellant

No. 20180076

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable James S. Hill, Judge.

REVERSED AND REMANDED.

Opinion of the Court by McEvers, Justice.

Derek K. Steiner, Assistant State's Attorney, Bismarck, ND, for plaintiff and appellee.

Christopher M. Redmann, Bismarck, ND, for defendant and appellant.

**McEvers, Justice.**

[¶1]    Travis Morsette appeals from a judgment entered upon a guilty plea to possession of a controlled substance and unlawful possession of drug paraphernalia, reserving his right to appeal the district court's order denying his motion to suppress evidence. Because we conclude there was not reasonable suspicion to initiate the traffic stop, we reverse the judgment and remand for further proceedings to allow Morsette to withdraw his guilty plea.

I

[¶2]    On September 8, 2017, a law enforcement officer, while on patrol stopped at a red light, observed a driver in the adjacent lane manipulating his touchscreen cell phone for approximately two seconds. The officer testified to observing the driver, later identified as Morsette, tap approximately ten times on the illuminated cell phone screen. The officer initiated a traffic stop based on his observations of the cell phone screen manipulations. Morsette told the officer he was changing the music on his cell phone. The officer conducted an investigation and Morsette was arrested and charged with possession of a controlled substance and unlawful possession of drug paraphernalia.

[¶3]    Prior to trial, Morsette moved to suppress all evidence, claiming the officer lacked reasonable suspicion to conduct the traffic stop. The district court denied Morsette's motion, holding the traffic stop was an investigatory stop and the officer had reasonable and articulable suspicion to initiate it.

[¶4]    On appeal, Morsette argues the district court erred in determining the officer had reasonable and articulable suspicion to conduct the traffic stop and that the officer's actions cannot be excused as a mistake of fact or law.

1

II

[¶5]    When reviewing a district court's decision on a motion to suppress, we:

> defer to the district court's findings of fact and resolve conflicts in testimony in favor of affirmance. We affirm the district court's decision unless we conclude there is insufficient competent evidence to support the decision, or unless the decision goes against the manifest weight of the evidence.

*State v. Wolfer*, 2010 ND 63, ¶ 5, 780 N.W.2d 650 (internal quotations and citations omitted). "Questions of law and the ultimate conclusion about whether the facts support a reasonable and articulable suspicion are fully reviewable on appeal." *State v. Smith*, 2005 ND 21, ¶ 11, 691 N.W.2d 203 (citation omitted).

III

[¶6]    "Investigatory traffic stops are valid when the officer conducting the stop had a reasonable and articulable suspicion the motorist has violated or is violating the law." *Wolfer*, 2010 ND 63, ¶ 6, 780 N.W.2d 650 (internal quotation and citation omitted). "The ultimate issue is whether a reasonable person in the officer's position would have been justified in stopping the vehicle because of some objective manifestation to suspect potential criminal activity." *State v. James*, 2016 ND 68, ¶ 7, 876 N.W.2d 720 (internal quotations and citations omitted). "The reasonable and articulable suspicion standard requires more than a 'mere hunch,' but less than probable cause." *Gabel v. N.D. Dep't of Transp.*, 2006 ND 178, ¶ 20, 720 N.W.2d 433 (quoting *Lapp v. N.D. Dep't of Transp.*, 2001 ND 140, ¶ 11, 632 N.W.2d 419). "Whether an officer had a reasonable and articulable suspicion is a fact-specific inquiry that is evaluated under an objective standard considering the totality of the circumstances." *State v. Rahier*, 2014 ND 153, ¶ 13, 849 N.W.2d 212 (citation omitted); *see also U.S. v. Arvizu*, 534 U.S. 266, 273 (2002) ("When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing.") (citation omitted). Additionally, "an officer's objectively

2

reasonable mistake, whether of fact or law, may provide the reasonable suspicion necessary to justify a traffic stop." *State v. Hirschkorn*, 2016 ND 117, ¶ 14, 881 N.W.2d 244. "The reasonable suspicion standard does not require an officer to see a motorist violating a traffic law or to rule out every potential innocent excuse for the behavior in question before stopping a vehicle for investigation." *Gabel*, at ¶ 20 (citation omitted). As such, the actual commission of criminal activity is not required to support a finding of reasonable suspicion.

[¶7] Here, the State concedes a seizure occurred but argues it was a reasonable investigatory traffic stop not in violation of the Fourth Amendment.

[¶8] North Dakota's law proscribing certain cell phone activity while driving reads:

1.    The operator of a motor vehicle that is part of traffic may not use a wireless communications device to *compose, read, or send an electronic message*.
2.    Under this section:
a.    "Electronic message" means a self-contained piece of digital communication that is designed or intended to be transmitted between physical devices. The term includes electronic mail, a text message, an instant message, a command or request to access a worldwide web page, or other data that uses a commonly recognized electronic communications protocol. The term *does not* include:
(1)    Reading, selecting, or entering a telephone number, an extension number, or voice mail retrieval codes and commands into an electronic device for the purpose of initiating or receiving a telephone or cellular phone call or using voice commands to initiate or receive a telephone or cellular phone call;
(2)    Inputting, selecting, or reading information on a global positioning system device or other navigation system device;
(3)    Using a device capable of performing multiple functions, such as fleet management systems, dispatching devices, phones, citizen band radios, music players, or similar devices, for a purpose that is not otherwise prohibited;
(4)    Voice or other data transmitted as a result of making a telephone or cellular phone call;

3

     (5)     Data transmitted automatically by a wireless communication device without direct initiation by an individual; or

     (6)     A wireless communications device used in a voice-activated, voice-operated, or any other hands-free manner.

    b.    "Traffic" means operation of a motor vehicle while in motion or for the purposes of travel on any street or highway and includes a temporary stop or halt of motion, such as at an official traffic-control signal or sign. The term does not include a motor vehicle that is lawfully parked.

3.    This section *does not* apply if a wireless communications device is used for obtaining emergency assistance to report a traffic accident, medical emergency, or serious traffic hazard or to prevent a crime about to be committed, in the reasonable belief that an individual's life or safety is in immediate danger, or in an authorized emergency vehicle while in the performance of official duties.

N.D.C.C. § 39-08-23 (emphasis added). The statute provides several proscribed phone-related activities as well as several permitted phone-related activities. Both proscribed and permitted activities appear to encompass actions that may require finger-to-phone tapping; for example, the proscribed activity of composing an electronic message could involve finger-to-phone tapping and the permitted activity of entering a telephone number could involve finger-to-phone tapping.

[¶9]    Morsette argues the Seventh Circuit in *U.S. v. Paniagua-Garcia*, 813 F.3d 1013 (7th Cir. 2016), supports a finding that the officer in this case did not have reasonable and articulable suspicion to conduct the traffic stop. In *Paniagua-Garcia,* the Seventh Circuit analyzed the applicability of an Indiana statute reading:

(a) A person *may not* use a telecommunications device to:
    (1) type a text message or an electronic mail message;
    (2) transmit a text message or an electronic mail message; or
    (3) read a text message or an electronic mail message;
while operating a moving motor vehicle *unless* the device is used in conjunction with hands free or voice operated technology, or *unless* the device is used to call 911 to report a bona fide emergency.

4

Ind. Code § 9-21-8-59 (emphasis added). In *Paniagua-Garcia*, while passing a car, an officer observed the driver (1) holding a cell phone in his right hand, (2) with his head bent toward the phone, and (3) appearing to be texting. 813 F.3d at 1014. The officer never "explained what created the appearance of texting as distinct from any one of the multiple other—lawful—uses of a cellphone by a driver." *Id.* In holding reasonable suspicion did not exist, the court in *Paniagua-Garcia* stated:

> Almost all the lawful uses we've listed would create the same appearance—cellphone held in hand, head of driver bending toward it because the text on a cellphone's screen is very small and therefore difficult to read from a distance, a finger or fingers touching an app on the cellphone's screen. No *fact* perceptible to a police officer glancing into a moving car and observing the driver using a cellphone would enable the officer to determine whether it was a permitted or a forbidden use.

*Id.* (citation omitted). Morsette argues that the North Dakota statute, like the Indiana statute in *Paniagua-Garcia*, does not proscribe merely "manipulating" a cell phone. Morsette also argues the absence of any evidence in the record supporting an inference he was using his phone for a *prohibited* purpose rather than any number of the permitted purposes allowed for by the statute is similar to *Paniagua-Garcia*.

[¶10] The State argues *Paniagua-Garcia* is distinguishable from Morsette's case because the Indiana statute only proscribes typing, transmitting, or reading "text messages" and "electronic mail messages" whereas the North Dakota statute proscribes composing, reading, or sending "electronic messages" which is defined to include electronic mail, text messages, instant messages, a command or request to access a worldwide web page, or other data that uses a commonly recognized electronic communications protocol. The State argues that in North Dakota, "the few specifically allowed uses for cell phones while driving are outweighed by the numerous impermissible uses for cell phones; the exact opposite of Indiana's regulation of cell phone usage." The significance of this distinction seems to be that an officer in North Dakota, under North Dakota law, might have *greater* reason to believe that an individual using their phone while driving would be using it in a manner proscribed by N.D.C.C. § 39-08-23 compared to an officer observing the

5

same activity in Indiana merely because the North Dakota statute outlines more proscribed activities than the Indiana statute.

[¶11]   The State further attempts to distinguish this case from the *Paniagua-Garcia* case by noting that the officer in Morsette's case observed more inculpatory activity than the officer in *Paniagua-Garcia*.  Here, the officer observed: (1) Morsette manipulating the cell phone screen approximately ten times within two seconds, and (2) light emanating from Morsette's cell phone screen.  In *Paniagua-Garcia*, the officer observed: (1) the driver holding the cell phone in one hand, (2) the driver's head bent toward the phone, and (3) the driver appeared to be texting.  However, it is unclear in *Paniagua-Garcia* what facts led the officer to believe the driver "appeared to be texting."

[¶12]   The State cites to *People v. Corrales* to support the proposition that other courts have found reasonable and articulable suspicion to stop motorists appearing to be using their phones, but that citation is misplaced.  152 Cal. Rptr.3d 667, 670 (Cal. Ct. App. 2nd Dist. 2013).  In *Corrales*, the officers first observed the defendant parked by the side of the road texting on his cell phone.  *Id*.  Approximately five minutes later, the same officers returned and observed the defendant pulling into traffic in front of them while leaning and looking down a few times "as though he was still using his cellular telephone."  *Id*.  The State's argument disregards the fact that the officers in *Corrales* initially observed the defendant *actually* texting.  *Id*.  The officer here did not testify to previously encountering Morsette and observing him actually texting; his first encounter with Morsette in this case was on the road.  The facts here are not analogous.

[¶13]   When confronted with matters of first impression involving North Dakota statutes, this Court may glean insight from other states' and our own past interpretations concerning similar statutes.

## A

[¶14]  Like the cell phone statute, a stop based on a perceived violation of a tinted-window statute also requires an officer ascertain a reasonable likelihood of unlawful conduct under a statutory scheme providing for both permitted and proscribed conduct, arguably uneasily discernable at a distance.  North Dakota's tinted-window statute reads, in pertinent part:

> An individual may not operate a motor vehicle with any object, material, or tinting displayed, affixed, or applied on the front windshield or any window unless the object, material, or tinting in conjunction with the windshield upon which it is displayed, affixed, or applied has a light transmittance of at least *seventy percent* or the object, material, or tinting in conjunction with a window other than the windshield upon which it is displayed, affixed, or applied has a light transmittance of at least *fifty percent*.  This subsection does not apply to windows behind the operator if the motor vehicle is equipped with outside mirrors on both sides that meet the requirements of section 39-21-38.

N.D.C.C. § 39-21-39(4) (emphasis added).  We have upheld an officer's finding of reasonable suspicion to stop a vehicle where, on the basis of his training and experience, the officer observed a vehicle which he perceived had excessive tint when he drove next to it.  *State v. $127,930 United States Currency*, 2017 ND 282, ¶ 9, 904 N.W.2d 307.

[¶15]  Other jurisdictions have considered the existence of reasonable suspicion for stops based on perceived violations of similar statutes proscribing tinted windows.  *See People v. Hanes*, 72 Cal. Rptr.2d 212, 214 (Cal. App. Dep't Super. Ct. 1997) (reasonable suspicion upheld where officer testified the tinting in question was "so dark as to appear black and prevent the officer from seeing the occupants of the front seats"); *State v. Cohen*, 790 A.2d 202, 205 (N.J. Super. 2002) (reasonable suspicion upheld where officer's "initial observation that the windows were so darkly tinted as to obstruct vision" pointed to a reasonable likelihood of unlawful conduct under statute proscribing "tinted spray or plastic material added to previously approved glazing in the front windshield or windows").

[¶16]  In Morsette's case, the arresting officer testified that (1) at the time of the violation he had worked for the police department for two-and-a-half years, (2) he observed Morsette manipulating his cell phone for approximately two seconds, tapping the illuminated screen about ten times, and (3) he could not see the content of the screen at the time of the tapping.  No testimony was elicited about Morsette's past success rate at identifying violations of the cell phone-use-while-driving law or any unique training he received enabling him to conclude the facts he observed amounted to violations of the law.  Although he testified to observing the screen's illumination and finger-to-phone tapping, there is absent a link between those observations and an objectively reasonable basis to suspect a violation.  The officer here was unable to articulate why his suspicion was reasonable.

B

[¶17]  The State argues whether or not a traffic violation actually occurred does not vitiate a finding of reasonable and articulable suspicion.  North Dakota law permits a finding of reasonable suspicion even in instances where the officer operates under a mistaken belief of fact or law:

> In *Heien v. North Carolina*, 135 S.Ct. 530 (2014), the United States Supreme Court held an officer's objectively reasonable mistake of fact or law may provide the reasonable suspicion necessary to justify a traffic stop, stating:
>> Reasonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law.  The officer may be reasonably mistaken on either ground.  Whether the facts turn out to be not what was thought, or the law turns out to be not what was thought, the result is the same: the facts are outside the scope of the law.  There is no reason, under the text of the Fourth Amendment or our precedents, why this same result should be acceptable when reached by way of a reasonable mistake of fact, but not when reached by way of a similarly reasonable mistake of law.
> *Id*. at 536.  Where an officer makes a mistake, whether of fact or law, such mistake may provide the reasonable suspicion justifying a traffic

8

stop only when objectively reasonable because the "Fourth Amendment tolerates only *reasonable* mistakes . . . ." *Id.* at 539.

*State v. Hirschkorn*, 2016 ND 117, ¶ 14, 881 N.W.2d 244. The *Heien* case provided an example of a reasonable mistake of fact: "An officer might, for example, stop a motorist for traveling alone in a high-occupancy vehicle lane, only to discover upon approaching the car that two children are slumped over asleep in the backseat." *Heien*, at 534.

[¶18] At the hearing on the motion to suppress, the officer testified he understood what constituted a violation of the statute. Therefore, there was no mistake of law. Further, he was unable to articulate how Morsette's conduct violated the statute, even if that observed conduct was a mistake of fact. If the officer is unable to articulate why he thought Morsette's conduct violated the statute, it is not reasonable to conclude he made a reasonable mistake of fact. A suspicion so broad that would permit law enforcement to stop a substantial portion of the lawfully driving public is not reasonable. *See U.S. v. Flores*, 798 F.3d 645, 649 (7th Cir. 2015) (relying on *Delaware v. Prouse*, 440 U.S. 648, 661 (1979) (observing that courts must circumscribe "standardless and unconstrained discretion" that would otherwise allow officers to stop all drivers)). We conclude there was no mistake of fact.


IV

[¶19] We reverse the judgment and remand to allow Morsette to withdraw his guilty plea and for further proceedings consistent with this opinion.

[¶20]   Lisa Fair McEvers
Daniel J. Crothers
Jon J. Jensen
Jerod E. Tufte


**VandeWalle, Chief Justice, dissenting.**

9

[¶21] Because I believe the fact that a person may be using a wireless communications device, here, a cell phone, for a valid purpose does not negate the reasonable suspicion that the person is using the cell phone for a prohibited purpose, I respectfully dissent. Indeed, when one examines the provisions of N.D.C.C. § 39-08-23 it is as probable that the cell phone is used to send or receive prohibited electronic messages as it is that the device is being used for one of the lawful purposes, perhaps more so. My position is, admittedly, based on what I perceive to be the reasonable probabilities rather than the possibilities. But, reasonable suspicion is more than a hunch but it is surely a much lesser standard than proof beyond a reasonable doubt required for conviction and a lesser standard than probable cause required for arrest for an offense.

[¶22] It appears to me that it is improbable that someone observing at a distance a person using a cell phone is able to determine the specific use of the device. As a practical matter, I understand that the result is that either every driver using a cell phone may be reasonably suspected of using the cell phone for a prohibited purpose or no driver may be reasonably suspected of using the device for an unlawful purpose. The statute was likely drafted with little thought of how offenders are to be apprehended in the first instance. It seems to me that the majority opinion substantially reduces, if not eliminates, the effective enforcement of the statute.

[¶23] I would affirm the district court.

[¶24] Gerald W. VandeWalle, C.J.

10