# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2021 ND 152

State of North Dakota,                                  Plaintiff and Appellee

v.

Michael Anthony Boger,                          Defendant and Appellant

## No. 20200297

Appeal from the District Court of Ward County, North Central Judicial District, the Honorable Douglas L. Mattson, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Jensen, Chief Justice, in which Justices Crothers and Tufte joined. Justice McEvers filed an opinion dissenting, in which Justice VandeWalle joined.

Christopher W. Nelson, Assistant State's Attorney, Minot, ND, for plaintiff and appellee.

Katie Miller, Minot, ND, for defendant and appellant.

**State v. Boger**
**No. 20200297**

**Jensen, Chief Justice.**

[¶1]   Michael Anthony Boger appeals from a criminal judgment after entering a conditional guilty plea to driving under the influence, a third offense in seven years. Boger argues the district court erred in denying his motion to suppress evidence because video evidence conclusively shows the violation alleged to be the reason for the traffic stop did not occur. The State argues the arresting officer had reasonable and articulable suspicion of a traffic violation or, in the alternative, the officer initiated the stop as the result of an objectively reasonable mistake of fact. We reverse and remand this case to allow Boger to withdraw his conditional guilty plea.

I

[¶2]   At approximately 11:30 p.m. on November 24, 2019, an officer with the Minot Police Department initiated a traffic stop on Boger's vehicle for failure to have the rear registration plate illuminated in violation of N.D.C.C. § 39-21-04(3). Following the traffic stop, Boger was arrested and charged with driving under the influence, a third offense in seven years. Boger moved to suppress the evidence obtained during the traffic stop arguing the officer lacked reasonable and articulable suspicion for the stop.

[¶3]   Prior to the traffic stop, the arresting officer was traveling eastbound on Burdick Expressway in his patrol vehicle when he was passed by Boger's vehicle traveling westbound on the same road. As Boger's vehicle passed, the officer testified he looked in his driver's side rear-view mirror and noticed Boger's rear license plate area was not illuminated. The officer turned around to follow Boger's vehicle. Once behind Boger's vehicle, the officer testified he observed the rear license plate was still not illuminated. After approximately five to seven seconds of following Boger's vehicle, the officer initiated a traffic stop.

1

[¶4]   The officer testified the rear license plate was not illuminated when he first observed Boger's vehicle, was not illuminated when he was following Boger's vehicle, and the license plate illumination light was not functioning during the traffic stop. During cross-examination, the officer's body-worn camera video was entered into evidence. Boger argues the video clearly shows the license plate illumination light was functioning. The officer gave his opinion that the plate appeared illuminated on the body-worn camera video, not because the license plate illumination light was on, but because of multiple lights shining onto the plate, such as the lights from the adjacent gas station, the headlights on the patrol vehicle, the red and blue lights on the patrol vehicle, and the spotlight on the patrol vehicle. Boger testified that before he was placed into the officer's patrol vehicle, he stood behind his own vehicle and observed that his license plate light was functioning and illuminating his license plate.

[¶5]   The district court denied Boger's motion to suppress determining the officer had reasonable and articulable suspicion Boger's rear license plate was not properly illuminated under N.D.C.C. § 39-21-04(3). The court found as follows:

> Defendant argues that the rear license plate was illuminated, and therefore [the arresting officer] did not observe a traffic violation. However, N.D.C.C. § 39-21-04(3) requires not only that the rear view license plate be illuminated, but also that the light "render it clearly legible from a distance of fifty feet [15.24 meters] to the rear." Based upon the testimony of [the arresting officer], the alleged illumination did not render the rear license plate clearly legible to [the arresting officer] as the vehicles passed each other. [the arresting officer] credibly maintained that he believed the rear license plate was not illuminated, and any apparent illumination of the rear lights he later observed when his vehicle was behind the Defendant's stopped vehicle was a result of reflection from [the arresting officer's] own headlights after he initiated the traffic stop.

2

[The arresting officer] had a reasonable and articulable suspicion that Defendant's rear license plate was not properly illuminated to comply with N.D.C.C. § 39-21-04(3) based upon his observations while passing Defendant's vehicle.

[¶6] Boger appeals the denial of his motion to suppress. Boger argues the body-worn camera video shows the rear license plate light on his vehicle was functioning at the time of the stop, in clear contradiction to the officer's testimony the light was not working. On appeal, Boger also argued that any mistake of fact made by the officer regarding the function of the rear license plate light was objectively unreasonable.

## II

[¶7] This Court's standard of review for a motion to suppress has been stated as follows:

> When reviewing a district court's decision on a motion to suppress, we defer to the court's findings of fact and resolve conflicts in testimony in favor of affirmance. This Court will affirm the district court's decision on a motion to suppress unless we conclude there is insufficient competent evidence to support the decision, or unless the decision goes against the manifest weight of the evidence. Whether a finding of fact meets a legal standard is a question of law, which is fully reviewable on appeal. Whether law enforcement violated constitutional prohibitions against unreasonable search and seizure is a question of law.

*State v. Bolme*, 2020 ND 255, ¶ 5, 952 N.W.2d 75 (citations omitted).

[¶8] A law enforcement officer may initiate a traffic stop for an investigation if the officer has reasonable and articulable suspicion the driver has violated or is violating a law. *State v. Selzler*, 2020 ND 123, ¶ 7, 943 N.W.2d 762. The reasonable suspicion standard is less stringent than probable cause but requires more than a "mere hunch." *State v. Corum*, 2003 ND 89, ¶ 10, 663 N.W.2d 151. The existence of reasonable suspicion is a fact-specific inquiry, and this Court employs an objective standard based on the totality of the circumstances. *State v. Morsette*, 2019 ND 84, ¶ 6, 924 N.W.2d 434. "Reasonable suspicion for a stop exists when a reasonable person in the

3

officer's position would be justified by some objective manifestation to believe the defendant was, or was about to be, engaged in unlawful activity." *Corum*, at ¶ 10.

[¶9] "Reasonable suspicion of a minor traffic violation will provide a sufficient basis to justify a stop." *Bolme*, 2020 ND 255, ¶ 8. Moreover, under the reasonable suspicion standard, an officer is not required to see a motorist violating a traffic law or to rule out every potential innocent excuse before initiating a traffic stop. *Id*. "The actual commission of a crime is not required to support a finding of reasonable suspicion." *Id*.

[¶10] Section 39-21-04(3), N.D.C.C., provides:

> Either a taillamp or a separate lamp must be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of fifty feet [15.24 meters] to the rear. Any taillamp or taillamps, together with any separate lamp for illuminating the rear registration plate, must be so wired as to be lighted whenever the headlamps or auxiliary driving lamps are lighted.

[¶11] The district court determined the officer had reasonable suspicion to stop Boger's vehicle for failure to have the rear registration plate properly illuminated in violation of N.D.C.C. § 39-21-04(3). Boger contends the video evidence clearly contradicts the officer's testimony that the light illuminating his license plate was not functioning.

[¶12] The officer testified variously that the license plate light was not illuminated, it was not functioning, and that he saw nothing as he walked toward the rear of Boger's vehicle. During direct examination, the officer testified as follows:

Q. And what was the reason for the traffic stop?
A. For the rear license plate not being illuminated.
                    *       *       *
Q. The light in question, was it illuminated?
A. No. He insisted that it was, but I didn't see anything.
Q. And this was the back light?
A. Yes.

During cross-examination of the officer, and after the video was played, questioning included the following:

Q. (By Ms. Miller) Okay, Officer. So, when you made contact with Mr. Boger — after seeing the video — you, again, had stated the reason that he was stopped; correct?
A. Yes.
Q. And that was for not having his license plate illuminated; correct?
A. Yep.
Q. But his license plate light was functioning; correct?
A. No. I did have multiple lights shining on the car, and we were in a well-illuminated area; so…

The officer further testified:

Q. (By Ms. Miller) So, Officer, when you had walked from your vehicle to Mr. Boger's vehicle to make contact with him, did you look to see if his license plate lights were functioning?
A. Yes.
Q. And what did you see?
A. Nothing. Like I said, I had multiple lights shining on the license plate area, so at that time it wasn't dark anymore.

[¶13] The video recorded by the officer's body-worn camera stands in direct conflict with this testimony. As the officer approaches the rear of Boger's vehicle, the video clearly depicts the rear bumper and license plate for five

5

seconds beginning at the indicated time of T05:38:35Z.[1] There is a single white light immediately to the right of the license plate that is fully illuminated. The rear of the vehicle, including the license plate and the light, appear clean. The

1



light can again be seen on the video for about fifteen seconds starting at T05:40:15Z.[2] The light is again briefly visible as the stop concludes at T05:42:10Z. Every time the light comes into the frame of the video it is bright, clear, and continuously illuminated.

[¶14] When asked if he looked to see if the light was functioning as he walked toward Boger's vehicle, the officer confirmed that he looked and said he saw "Nothing." The officer explained that the rear plate "wasn't dark anymore" because there were multiple sources of light. Asked again if the license plate light was illuminated, the officer answered, "No." Asked once more if the license plate light was functioning, the officer again answered "No." The footnotes to this opinion include still images from the video clearly showing that this testimony is contrary to the video evidence. The images show a license plate light bright enough to reflect off the dark surface below the light.

[¶15] The district court, following a reference to N.D.C.C. § 39-21-04(3), noted that a rear license plate "requires not only that the rear view license plate be illuminated, but also that the light 'render it clearly legible from a distance of fifty feet [15.24 meters] to the rear.'" The court then made the following finding:

---

2



7

"Based upon the testimony of [the officer], the alleged illumination did not render the rear license plate clearly legible to [the officer] as the vehicles passed each other." The officer's testimony was limited to the rear license plate not being illuminated. The officer did not make any reference to whether the license plate was "legible" or any similar reference to not being able to read the license plate. His testimony that the license plate was not illuminated was consistent at the time he first observed Boger, after he had turned around and followed Boger for five to seven seconds, as he walked to Boger's vehicle after the vehicles had come to a stop, and while he stood behind Boger's vehicle during the stop. The unambiguous testimony of the officer was that the stop was initiated because the license plate was not illuminated without a single reference to the legibility of the license plate. We conclude there is insufficient testimony to support the court's finding that the officer's testimony established that the rear license plate was not legible or that the officer initiated the traffic stop for any reason other than the rear license plate not being illuminated.

[¶16] The district court further found "[the officer] credibly maintained that he believed the rear license plate was not illuminated, and any apparent illumination of the rear lights he later observed when his vehicle was behind the Defendant's stopped vehicle was a result of reflection from [the officer's] own headlights after he initiated the traffic stop." The officer's testimony is inconsistent with the body camera video. The still images from the video clearly show the officer's testimony is contrary to the video evidence. The images show a license plate light bright enough to reflect off the dark surface below the light.

[¶17] We are not the first appellate court to consider video evidence that contradicts the testimony of an officer under a deferential standard of review for findings of fact. The Indiana Supreme Court has qualified its "almost total deference" in such situations: "where the video evidence indisputably contradicts the trial court's findings, relying on such evidence and reversing the trial court's findings do not constitute reweighing." *Love v. State*, 73 N.E.3d 693, 699 (Ind. 2017). The court explained further: "To be clear, in order that the video evidence indisputably contradict the trial court's findings, it must be such that no reasonable person could view the video and conclude otherwise."

8

*Id.* To determine whether different interpretations of a video may be reasonable and thus whether deference remains appropriate, the appellate court must consider the video quality, the lighting and angle, and whether the video is a complete depiction of the events at issue. *Id.*; *see also Commonwealth v. Griffin*, 2015 PA Super 117, 116 A.3d 1139, 1144 (reversing denial of motion to suppress where a dash cam video "clearly rebuts" the officer's testimony, resulting in a conclusion that the trial court's factual findings were not supported by the record); *Middleburg Hts. v. Wojciechowski*, 2015-Ohio-3879, ¶¶ 17-19 (Ct. App.) (reversing denial of motion to suppress where video contradicted the officer's testimony regarding the basis for the traffic stop and showed trial court's findings were against manifest weight of the evidence). Indeed, we have previously suggested the same result if video evidence contradicts officer testimony on the critical facts. *Crawford v. Director, N.D. Dep't of Transp.*, 2017 ND 103, ¶ 7, 893 N.W.2d 770 ("Our review of the video of the traffic stop does not contradict the arresting officer's testimony, and we do not reweigh that evidence or reassess the arresting officer's credibility.").

[¶18] The video evidence in this case clearly rebuts the officer's testimony. We agree with the Indiana Supreme Court that in situations "where the video evidence indisputably contradicts the trial court's findings, relying on such evidence and reversing the trial court's findings do not constitute reweighing." *Love*, 73 N.E.3d at 699. We conclude the court's finding that the license plate was not illuminated is contrary to the manifest weight of the evidence.

[¶19] The district court's determination that the officer had reasonable and articulable suspicion to stop Boger's vehicle was premised on two findings: the officer's testimony supported a finding the license plate was not legible and the license plate was not illuminated. There is insufficient evidence in the record to support a finding the officer stopped Boger's vehicle for any reason other than the rear license plate was not illuminated, and no evidence the stop was initiated based on the lack of license plate legibility. The court's finding the rear license plate was not illuminated is contrary to the manifest weight of the evidence. We reverse the court's decision denying the defendant's motion to suppress based on a finding the officer had a reasonable and articulable suspicion the rear license plate was not properly illuminated.

9

# III

[¶20] In the order denying Boger's motion to suppress, the district court acknowledged the State's alternative argument that even if Boger's license plate was properly illuminated, "any mistake by [the arresting officer] was reasonable." The court's order could be read as answering the State's alternative argument that any mistake was objectively reasonable by finding that the officer "credibly testified" and "credibly maintained that he believed the rear license plate was not illuminated." The court also found that the officer "believed" any illumination of the license plate was the result of light from sources other than a license plate light.

[¶21] This Court has previously acknowledged that "'an officer's objectively reasonable mistake, whether of fact or law, may provide the reasonable suspicion necessary to justify a traffic stop.'" *Bolme*, 2020 ND 255, ¶ 8 (quoting *State v. Hirschkorn*, 2016 ND 117, ¶ 14, 881 N.W.2d 244). Boger argues the video confirms his rear license plate light was functioning and argues the video confirmation of the officer's mistake compels the conclusion the officer lacked reasonable suspicion for the stop. We agree the video confirms that the light was functioning and any belief by the officer that the light was not functioning would have had to be a mistake of fact. A mistake of fact may support reasonable suspicion for a traffic stop if the mistake of fact was objectively reasonable. *Bolme*, 2020 ND 255, ¶ 8.

[¶22] Any mistake in this case would not have been isolated, but would have required the officer to have been continuously mistaken for an extended period of time. As Boger's vehicle passed the officer, the officer testified he looked in his driver's side rear-view mirror and would have had to mistakenly believe Boger's rear license plate was not illuminated. The officer then turned around to follow Boger's vehicle. Once behind Boger's vehicle, the officer again would have had to mistakenly believe the rear license plate was not illuminated. After approximately five to seven seconds of following Boger's vehicle, the officer initiated a traffic stop. Once Boger's vehicle was stopped, the officer again would have had to mistakenly believe the license plate was not properly illuminated and would have had to mistakenly believe any appearance of

10

illumination was the result of lights other than the illumination light on the vehicle. While video confirmation of mistakes do not render the mistake of fact per se objectively unreasonable, this mistake of fact would have had to persist from the initial contact with the drive through the length of the stop. Based on the record presented to the district court, we conclude a mistake of fact regarding whether the rear license plate was illuminated was objectively unreasonable.

## IV

[¶23] There is insufficient evidence in the record to support a finding the traffic stop was initiated for any reason other than the rear license plate of Boger's vehicle not being illuminated. The manifest weight of the evidence does not support a finding the rear license plate was not illuminated. Any mistake of fact regarding the illumination of the license plate is objectively unreasonable. We reverse the denial of the judgment and remand to allow Boger an opportunity to withdraw his conditional guilty plea.

[¶24] Jon J. Jensen, C.J.
Daniel J. Crothers
Jerod E. Tufte

**McEvers, Justice, dissenting.**

[¶25] I respectfully dissent. The majority focuses in part on the factual issue of whether Boger's license plate light was operative. It finds the still images from the body camera video clearly show the officer's testimony is contrary to the video evidence, despite testimony from a witness the district court found credible. Majority, at ¶ 16. The majority further concludes the court's finding that the license plate was not illuminated is contrary to the manifest weight of the evidence. Majority, at ¶ 18. I think the majority goes too far in what appears to me as reweighing the evidence by concluding the officer's testimony is inconsistent with the video. Majority, at ¶ 16. I do not conclude the manifest weight of the evidence is clear the officer was mistaken. Even assuming the officer was mistaken, the evidence does not support the majority's conclusion that the mistake was unreasonable. Majority, at ¶ 22.

11

[¶26] The majority relies on *Love v. State*, 73 N.E.3d 693 (Ind. 2017) as support for its decision to overturn the district court's findings. Yet in *Love*, the Supreme Court of Indiana deferred to a trial court's factual findings and rejected an argument that video evidence disproved them. *Id.* at 700. Love was charged and convicted by a jury of, among other offenses, resisting arrest. *Id.* at 695-96. There was a factual dispute as to whether Love complied with officers' commands. *Id.* at 700. Love claimed a dashboard camera video showed he immediately complied. *Id.* Overruling the Indiana Court of Appeals' reversal of Love's convictions based on the video, the Supreme Court of Indiana explained the video did not "irrefutably contradict police testimony," and therefore it would "defer to the trial court's factual determinations regarding weight of the evidence and credibility of the witnesses." *Id.*

[¶27] I agree with the majority that *Love* provides helpful guidance in this case, but I believe it supports a different outcome. The *Love* court provided a hypothetical example of when video evidence would support overruling a trial court's factual findings:

> [T]here may be other times when objective video evidence is complete and indisputably contradicts the other evidence in the case. For example, there could be a situation where the issue is whether a defendant consented to a search. The police testify that defendant consented to the search; however, on the video of the events, defendant indisputably says "no" when police ask if they may search his vehicle. In such an instance, it would not be appropriate to ignore the video evidence and only look to the evidence supporting the verdict citing the deferential standard of review.

73 N.E.3d at 698. The Indiana Supreme Court described its approach as "a narrow failsafe," and noted deference to a trial court should be given when "the video evidence is somehow not clear or complete or is subject to different interpretations." *Id.* at 699.

[¶28] *Carmouche v. State* presents a variation of the hypothetical the *Love* court described. 10 S.W.3d 323 (Tex. Crim. App. 2000). Law enforcement discovered illegal narcotics in Carmouche's pocket after searching him. *Id.* at

327. The officer who found the drugs testified that after he asked for permission to conduct the search, Carmouche agreed and voluntarily turned around and put his hands on a vehicle. *Id.* at 331. Based on a video of the encounter, the Court of Criminal Appeals of Texas overturned the lower court's finding that Carmouche had consented to the search. *Id.* at 332. The court noted the video contradicted the officer's testimony and instead showed the officers ordering Carmouche to put his hands on the car and beginning to search him while they "requested" permission. *Id.* The *Love* court relied on *Carmouche* as support for its approach of giving "almost total deference" to the trial court unless "video evidence indisputably contradicts the trial court's findings." 73 N.E.3d at 699.

[¶29] The question in the present case, as framed by the majority, is whether Boger's license plate light was operative on the night he was arrested. Two reasonable individuals observing a video of a lightbulb, with other lights shining on it, could disagree as to whether the bulb is emitting light or reflecting light—either because of the brightness of the other lights or the reflective characteristics of the bulb itself. They would have to gauge how bright they think the bulb appears and determine what effect they think the other lights' glare might have on it. In other words, this is not a clear-cut case of "objective video evidence" of an officer testifying a defendant said "yes" when video evidence reveals he said "no." *Love*, 73 N.E.3d at 698. Nor is it a case where an officer testified a defendant voluntarily did something when in fact the video shows the officer ordered him to do it. *Cf. Carmouche*, 10 S.W.3d at 332.

[¶30] At the suppression hearing, when the arresting officer was asked whether Boger's license plate light was functioning, the officer maintained it was not. The officer testified it was difficult to see the bulb was not illuminated in the video because of the spotlight from his patrol car and the lights from the parking lot. The district court viewed the video, heard the officer's testimony, and found: "[the arresting officer] credibly maintained that he believed the rear license plate was not illuminated, and any apparent illumination of the rear lights he later observed when his vehicle was behind the Defendant's stopped

13

vehicle was a result of reflection from [the arresting officer's] own headlights after he initiated the traffic stop." Majority, at ¶ 5.

[¶31] Yet, based on its interpretation of what the video depicts as captured by the reproduced still images, the majority rejects the district court's credibility determination and finds the video conclusively establishes Boger's license plate light was operative on the night he was arrested. I am not so sure. First, the video does not show what the officer observed as Boger's vehicle passed him. I am not even sure the light source shown in the video is a license plate light. The video shows what could be a license plate light, a black square-shaped object, just to the right of the license plate, which does not appear to be illuminated. More importantly, there was an explanation for why the bulb, if that is what the bright spot in the video is, may appear illuminated: the glare of other light sources. In my review of the video, I see light, but I cannot discern whether it is *a light* illuminating the license plate or a reflection of light from the squad car on a bulb or other reflective surface on the bumper. The majority opines that the light is bright enough to reflect off the dark surface below the light. Majority, at ¶ 14. However, it makes no sense to me that a light intended to illuminate the license plate would reflect downward onto the black surface of the bumper; rather it makes more sense to me that this is a reflection of light from the squad car, a source of light higher than the license plate. In other words, the video evidence "is subject to different interpretations" and therefore does not "indisputably contradict the trial court's findings." *Love*, 73 N.E.3d at 699.

[¶32] Commenters have cautioned courts not to fall prey to the allure of video evidence, which "seems to invite the viewer to suspend critical judgment in the face of the authority of the image" and elevate what it depicts as the conclusive truth despite conflicting evidence. Naomi Mezey, *The Image Cannot Speak for Itself: Film, Summary Judgment, and Visual Literacy*, 48 Val. U. L. Rev. 1, 22 (2013).

> Video is more cognitively and emotionally arousing and vivid than other forms of evidence . . . . This property of seemingly direct access leads perceivers to evaluate video with a *naïve realism*, the sense that what is being conveyed is a complete, objective

14

reflection of events as they really are . . . . Further, the fluency or ease with which video is processed enhances the sense that the content is true. In this way, perceivers go from viewing a video to believing it to be an authoritative, nonpartisan account of the events it represents.

[¶33] Yael Granot et al., *In the Eyes of the Law: Perception versus Reality in Appraisals of Video Evidence*, 24 Psychol. Pub. Pol'y & L. 93, 94 (2018) (internal citations omitted). "People weight the inferences they draw from video more heavily than they do from other forms of evidence, even when credible testimony contradicts the inferences drawn from ambiguous or inconclusive footage." *Id.* at 98.

[¶34] I also think the majority is improperly relying on still images created from the video that were not separately admitted into evidence. The majority's reliance on anything other than the moving video is unwarranted.

[¶35] "The admission or rejection of photographs is within the discretion of the trial court." *Hamilton v. Oppen*, 2002 ND 185, ¶ 22, 653 N.W.2d 678. "The proper creation, treatment, and display of still video images is more complex than it initially seems." 58 Am. Jur. *Trials* 481, § 29 (1996 & Supp. 2021) The witness providing foundation for an enhanced image "must be able to explain the process the program uses to change the original digital image and to testify that nothing is added to the photograph, as well as the other foundational factors." James Campbell, *Evidentiary Requirements for the Admission of Enhanced Digital Photographs*, 74 Def. Couns. J. 20 (Jan. 2007).

[¶36] In the present case, the still images that have been reproduced from the video were not admitted into evidence. To be clear, I am not suggesting the images were improperly altered. I simply believe it is improper to consider and analyze a still image created from a video on appeal that is not separately in evidence. Even if it were proper to analyze these still images, I am not convinced they warrant overruling the district court.

[¶37] I agree that under the standard of review this Court must review the evidence in order to determine whether the district court's decision goes against the manifest weight of the evidence. But it is unnecessary to go into a

detailed analysis of what the video did or did not show. Whether or not the officer was mistaken in testifying the license plate light was not illuminated in the video does not change what the officer testified he saw as Boger's vehicle passed by him. The district court found in part:

> Based upon the testimony of [the arresting officer], the alleged illumination did not render the rear license plate clearly legible to [the arresting officer] as the vehicles passed each other.
>
> . . . .
>
> [The arresting officer] had a reasonable and articulable suspicion that the Defendant's rear license plate was not properly illuminated to comply with N.D.C.C. § 39-21-04(3) based upon his observations while passing Defendant's vehicle.

Majority, at ¶ 5. I do not agree that the findings are not supported by sufficient evidence.

[¶38] In addition, even if the officer was mistaken that the light was not illuminated, the evidence does not support a finding that the mistake was unreasonable. In *State v. Hirschkorn,* we stated: "an officer's objectively reasonable mistake, whether of fact or law, may provide the reasonable suspicion necessary to justify a traffic stop." 2016 ND 117, ¶ 14, 881 N.W.2d 244. We further noted:

> In *Heien v. North Carolina*, [574 U.S. 54, 61 (2014)], the United States Supreme Court held an officer's objectively reasonable mistake of fact or law may provide the reasonable suspicion necessary to justify a traffic stop, stating:
>
> > Reasonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law. The officer may be reasonably mistaken on either ground. Whether the facts turn out to be not what was thought, or the law turns out to be not what was thought, the result is the same: the facts are outside the scope of the law.

*Id.*

16

[¶39] The majority concludes any mistake in this case would have been unreasonable because the officer would have been "continuously mistaken for an extended period of time." Majority, at ¶ 22. However, aside from the arresting officer's testimony, there is no evidence detailing how Boger's license plate light appeared as Boger passed by the officer or while the officer followed him. I therefore disagree with the majority's conclusion that the evidence establishes the mistake in this case was persistent and unreasonable.

[¶40] I would defer to the court's assessment of the evidence. "[W]here the appropriate yardstick [is] the knowledge and the perceptions of persons at the time of the event, the temptation to privilege what is captured on video as the higher truth must be resisted." Mary D. Fan, *Justice Visualized: Courts and the Body Camera Revolution*, 50 U.C. Davis L. Rev. 897, 951 (2017). We recently affirmed a district court order suppressing evidence and declined to reweigh conflicting evidence stating, "[m]indful of the district court's superior position to assess the credibility of witnesses, we do not reweigh the evidence." *State v. Cook*, 2020 ND 69, ¶ 17, 940 N.W.2d 605. It is the district court, and not this Court, who decides whether the officer was credible.

[¶41] I would affirm because the district court's finding that the officer had reasonable and articulable suspicion of a violation is supported by the evidence and not indisputably contradicted by the video.

[¶42] Lisa Fair McEvers
        Gerald W. VandeWalle

17