2013 ND 239

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Wayne James OTTO, Defendant and Appellant.**

No. 20130096.

Supreme Court of North Dakota.

Dec. 19, 2013.

Dawn M. Deitz, Assistant State's Attorney, Bismarck, N.D., for plaintiff and appellee.

Thomas J. Glass, Bismarck, N.D., for defendant and appellant; submitted on brief.

SANDSTROM, Justice.

[¶ 1] Wayne Otto appeals after the district court denied his motion to suppress evidence obtained during a warrantless search of a camper and he entered a conditional plea of guilty. We affirm the judgment, concluding the camper falls within the scope of the automobile exception to the warrant requirement, justifying the warrantless search because law enforcement had probable cause to believe drugs were present in the vehicle.

I

[¶ 2] Bismarck Police Officer Scarlet Vetter testified she has been working for the Bismarck Police Department for three years, and while on patrol at approximately 1:27 a.m. on July 26, near Frontier Drive in Bismarck, she observed a camper in a parking lot with the front door wide open. She testified to seeing a light flashing around it, like some type of flashlight, so she stopped her vehicle in the middle of the street, turned off the headlights, and watched the camper. She testified the door to the camper was shut several times but kept swinging open, so she called for backup. Officer Vetter testified that once backup arrived, she and two other officers approached the camper and she could immediately smell a very strong odor of marijuana coming from the camper. She testified that as the officers approached the camper, a female came out of the camper and they began speaking with her. She testified the female, later identified as Loretta Stroud, said she was there to check on and secure the camper for her stepfather, Wayne Otto. Officer Vetter testified Stroud said no one else was inside the camper. She testified the officers heard someone moving around inside the camper, and as they began approaching it, the front door slammed shut. She testified Stroud said the person in the camper was Mark Backer, but when the officers asked Stroud to ask him to come out of the camper, it was Wayne Otto who came out. Officer Vetter testified they arrested Otto because there was an outstanding warrant for him.

[¶ 3] Officer Vetter testified Bismarck Police Sergeant Jesse Hellman, the patrol sergeant for the shift, then arrived at the scene. She testified Sergeant Hellman contacted Bismarck Police Detective Bolme, informing him of the odor of marijuana and his intention to seek a search warrant for the camper. Officer Vetter testified that prior to the granting of the warrant, she and Sergeant Hellman entered the camper with guns drawn to make sure there was no one else inside. She testified they decided to do a sweep of the camper because the lighting was poor and they did not know whether anyone else was inside, so they were concerned for their safety. She testified, "[W]e were concerned for our safety." She testified she did not know at the time of the sweep, but was later informed, Otto did not con-

sent to the officers' entering the camper. In Officer Vetter's follow-up report, she stated that when she and Sergeant Hellman entered the camper during the sweep, she observed a large shoe box full of marijuana and two zip-lock baggies containing a white substance she believed to be meth.

[¶ 4] Sergeant Hellman testified that he has 13 years of experience working for the Bismarck Police Department and that he arrived on the scene about 30 minutes after the initial call for backup and entered the camper for a security sweep about five minutes after arriving on the scene. He testified there was absolutely concern for officer safety when the protective sweep was done, stating in his testimony, "We're not safe standing out there[.]" He testified Stroud had already falsely stated that no one was inside the camper, the area was known to be high in crime, the camper was close to a known drug hangout with persons likely therein, and the officers were standing out in the open in a parking lot, with no cover, and they were not sure whether someone else was still in the camper. He also testified they wanted to make it safe for everyone because there was a child in Stroud's nearby vehicle. He testified he assumed when he arrived on the scene that the camper had already been checked. But when he found out the scene was not secure, he decided the officers needed to secure the scene, stating, "Maybe that's why I'm a supervisor." Additionally, he testified camper walls are very thin and unable to stop any kind of gunfire rounds.

[¶ 5] The State charged Otto with three drug-related offenses: possession of methamphetamine with intent to deliver, possession of marijuana with intent to deliver, and usage or possession with intent to use drug paraphernalia. Otto moved to dismiss the charges and to suppress evidence obtained from the warrantless entry of his camper. The State argued the search was valid as a safety sweep, and also as within the scope of the automobile exception. The district court denied the motion, finding a safety sweep was properly conducted for exigent circumstances present at the scene. Otto entered a conditional guilty plea, reserving the right to appeal the denial of his suppression motion, and a criminal judgment was entered.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. Otto timely appealed under N.D.R.App.P. 4(b). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 29–28–06. *See State v. Guscette*, 2004 ND 71, ¶ 4, 678 N.W.2d 126 (appeal from suppression order treated as an appeal from subsequently entered judgment).

II

[¶ 7] Otto argues his residence was illegally searched when Officer Vetter and Sergeant Hellman searched his camper prior to obtaining a search warrant. He claims the possible presence of unidentified persons, without more, fails to create an exigent circumstance justifying the warrantless safety sweep of the camper, which he claims was his residence. Although the district court upheld the search on the basis of a safety sweep, we may affirm the district court on any basis properly before it. *See State v. Ramsey*, 2005 ND 42, ¶ 12, 692 N.W.2d 498.

A

[¶ 8] We first consider whether the search falls within the scope of the automobile exception.

[¶ 9] We have outlined the standard of review for pre-trial suppression motions:

A trial court's findings of fact in preliminary proceedings of a criminal case will not be reversed if, after the conflicts

in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence. *City of Grand Forks v. Risser*, 512 N.W.2d 462, 464 (N.D.1994) (request for second alcohol test); *State v. Murray*, 510 N.W.2d 107, 109 (N.D. 1994) (voluntariness of confession); *State v. Nelson*, 488 N.W.2d 600, 602 (N.D.1992) (reasonable suspicion to stop vehicle); *State v. Everson*, 474 N.W.2d 695, 704 (N.D.1991) (consent to search). We do not conduct a de novo review. *State v. Discoe*, 334 N.W.2d 466, 470 (N.D.1983). We evaluate the evidence presented to see, based on the standard of review, if it supports the findings of fact. *See Risser; Murray; Nelson; Everson; Discoe.*

*City of Fargo v. Thompson*, 520 N.W.2d 578, 581 (N.D.1994).

[¶ 10] We have also outlined the law governing warrantless searches under the Fourth Amendment:

All searches and seizures must be reasonable under the Fourth Amendment of the United States Constitution and Article I, Section 8 of the North Dakota Constitution. *Sayler v. N.D. Dep't of Transp.*, 2007 ND 165, ¶ 18, 740 N.W.2d 94. When an individual reasonably expects privacy in an area, the government must obtain a search warrant unless the search falls within a recognized exception to the warrant requirement. *State v. Dunn*, 2002 ND 189, ¶ 4, 653 N.W.2d 688. If no exception to the warrant requirement applies, the evidence obtained in violation of the Fourth Amendment protections against unreasonable searches and seizures must be suppressed as inadmissible under the exclusionary rule. *Id.; see also State v. Winkler*, 552 N.W.2d 347, 351–52 (N.D.

1996) (holding that searches conducted in violation of the Fourth Amendment are per se unreasonable, and thus any evidence found during such a search must be suppressed).

. . . .

Under the automobile exception, law enforcement officers may search for illegal contraband without a warrant when probable cause exists. *State v. Doohen*, 2006 ND 239, ¶ 10, 724 N.W.2d 158. Probable cause exists to search a vehicle if it is established that "certain identifiable objects are probably connected with criminal activity and are probably to be found at the present time at an identifiable place." *State v. Wamre*, 1999 ND 164, ¶ 6, 599 N.W.2d 268. If a warrantless search of an automobile is made with probable cause, based on a reasonable belief arising out of the circumstances known to the officer that the automobile contains articles which are subject to seizure, the search is valid. *State v. Binns*, 194 N.W.2d 756, 759 (N.D.1972).

*State v. Zwicke*, 2009 ND 129, ¶¶ 7, 9, 767 N.W.2d 869.

[¶ 11] This Court has never determined whether a camper, such as the one at issue in this case, is properly classified as an automobile or a home for purposes of Fourth Amendment analysis. If the camper falls within the scope of the automobile exception and probable cause exists to search it, then the warrantless search in this case was valid under the automobile exception to the warrant requirement.

[¶ 12] In *California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985), the United States Supreme Court outlined important factors to consider in cases involving the automobile exception:

When a vehicle is being used on the highways, or if it is readily capable of such use and is found stationary in a

place not regularly used for residential purposes—temporary or otherwise—the two justifications for the vehicle exception come into play. First, the vehicle is obviously readily mobile by the turn of an ignition key, if not actually moving. Second, there is a reduced expectation of privacy stemming from its use as a licensed motor vehicle subject to a range of police regulation inapplicable to a fixed dwelling. At least in these circumstances, the overriding societal interests in effective law enforcement justify an immediate search before the vehicle and its occupants become unavailable.

471 U.S. 386, 392–93, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985).

[¶ 13] This Court previously discussed the reasoning of *Carney:*

In *California v. Carney,* 471 U.S. 386 [105 S.Ct. 2066, 85 L.Ed.2d 406] (1985), the Court, once again confronted with a warrantless vehicle search, attempted to square its prior reliance on the two different "automobile exception" theories— mobility and a lesser expectation of privacy. Acknowledging that the "capability to be quickly moved" was the basis of the "automobile exception" under *Carroll v. United States* and the early automobile exception cases, the Court concluded it was no longer "the only basis for the exception." *Id.* at 391 [105 S.Ct. 2066]. "Even in cases where an automobile was not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justified application of the vehicular exception." *Id.* at 391 [105 S.Ct. 2066]. These reduced expectations, the Court reasoned, derived from the "pervasive schemes of regulation ... and the exigencies attendant to ready mobility [which] justify searches without prior recourse to the authority of a magistrate so long as the overriding standard of probable cause is met." *Id.* at 392 [105 S.Ct. 2066].

*State v. Garrett,* 1998 ND 173, ¶ 23, 584 N.W.2d 502. In *State v. Sommer,* this Court reiterated, "In sum, the recognition that vehicles are 'inherently mobile' and that vehicles garner a 'lesser expectation of privacy' excuse the need for a warrant." 2011 ND 151, ¶ 10, 800 N.W.2d 853.

[¶ 14] In *State v. Meadows,* this Court discussed the difference between automobiles and homes, but did not elaborate upon the gray area confronted in this case:

The courts have traditionally upheld warrantless searches of automobiles under circumstances in which the warrantless search of a home, apartment, or office would not have been upheld. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *State v. Binns,* 194 N.W.2d 756, 759 (N.D.1972). The reasons for this distinction are, first, that the inherent mobility of automobiles creates exigent circumstances wherein, as a practical necessity, rigorous enforcement of the warrant requirement is impossible; and, secondly, the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office. *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).

260 N.W.2d 328, 332 (N.D.1977) (*overruled by State v. Zwicke,* 2009 ND 129, ¶ 11, 767 N.W.2d 869, "to the extent that *Meadows* can be read to require something more than mobility for exigent circumstances"). Similarly, in *State v. Binns,* this Court distinguished automobiles from homes and offices. *See Binns,* 194 N.W.2d 756, 759 (N.D.1972) ("[A]utomobiles and other conveyances may be searched without warrants under circumstances that would not justify a search without a warrant of a home or an office....").

[¶ 15] The Second Circuit has addressed the specific question of whether a trailer, unhitched from its cab and parked in a warehouse, should be within the scope of the automobile exception under the Fourth Amendment. In determining whether a trailer should be treated as an automobile or a residence, the Second Circuit stated:

Trailers are routinely parked, legs dropped, with the expectation of promptly returning them to the road as soon as they have been loaded or a cab becomes available to haul them. The dropping of the legs in no way suggests that the trailer will not promptly return to service on the highways. In contrast, the raising of a motor home onto blocks is a more elaborate process, less easily undone, which might objectively indicate[ ] that [the motor home] is being used as a residence rather than a vehicle.... There is no question that the trailer in this case was being used as a vehicle and not a residence.

... Even where there is little practical likelihood that the vehicle will be driven away, the [automobile] exception applies ... when that possibility exists because of the vehicle's inherent mobility.... Although the arrestees were detained and the warehouse was secured by the agents, these facts had no bearing on the inherent mobility of the trailer itself. ... The justification to conduct such a warrantless search does not vanish once the car has been immobilized.

If the agents had left the area around the warehouse, the inherent mobility of the trailer would provide ample cause for concern that it could be removed from the jurisdiction. For example, as we observed in [U.S. v.] Howard [489 F.3d 484 (2d Cir.2007) ], confederates in another car, of whom the police were unaware, might have observed the police intervention and might drive the [trailer] away.... However, the very function of the automobile exception is to ensure that law enforcement officials need not expend resources to secure a readily mobile automobile during the period of time required to obtain a search warrant.

In sum, the trailer in this case was: (1) affixed with at least one axle and a set of wheels; and (2) capable of being attached to a cab and driven away. Therefore, we conclude that the trailer was inherently mobile at the time of the search, notwithstanding the fact that it was unhitched from the cab that initially transported it to the warehouse. Accordingly, we hold that the mobility rationale militates in favor of the conclusion that the search of the trailer was lawful under the automobile exception.

*United States v. Navas,* 597 F.3d 492, 499–500 (2d Cir.2010) (citations and quotations omitted). Other federal Courts of Appeals have held similarly. *See, e.g., United States v. Ervin,* 907 F.2d 1534, 1538 (5th Cir.1990) (warrantless search of camper-trailer in motel parking lot fell within automobile exception); *United States v. Smith,* 456 Fed.Appx. 200, 209 (4th Cir.2011) (trailer fell within automobile exception to warrant requirement and agent had probable cause).

[¶ 16] Because this Court has already adopted the reasoning of *Carney,* and because the federal courts have interpreted *Carney* to include trailers and campers within the automobile exception, we hold that the automobile exception applies to Otto's camper in this case. Otto's camper had the landing gear down, power cords were plugged in, and no vehicle was hooked up to it. Although the camper was not readily mobile by the turn of an ignition key, the two justifications in *Carney* are nevertheless satisfied under the same

reasoning employed by the Second Circuit in *Navas.* *See Navas,* 597 F.3d at 500. Otto's camper is not a fixed dwelling. Though his camper was not mobile while the officers were present, it was capable of being mobilized within a very short time.

[¶ 17] In addition, the camper was not in a place regularly used for residential purposes, temporary or otherwise. In *Sommer,* we concluded, " '[I]n addition to the special considerations recognized in the context of movable items, our Fourth Amendment jurisprudence has consistently accorded law enforcement officials greater latitude in exercising their duties in public places.' " *Sommer,* 2011 ND 151, ¶ 11, 800 N.W.2d 853 (quoting *Florida v. White,* 526 U.S. 559, 565, 119 S.Ct. 1555, 143 L.Ed.2d 748 (1999)). *Carney* reiterates this principle:

> The exception has historically turned on the ready mobility of the vehicle, and on the presence of the vehicle in a setting that objectively indicates that the vehicle is being used for transportation. These two requirements for application of the exception ensure that law enforcement officials are not unnecessarily hamstrung in their efforts to detect and prosecute criminal activity, and that the legitimate privacy interests of the public are protected.

*California v. Carney,* 471 U.S. 386, 394, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). The fact that Otto's camper was in a commercial parking lot makes this case more akin to an automobile search than to the search of a permanent residence.

[¶ 18] Under the automobile exception, the search was permissible in this case because there was probable cause to search the camper. Probable cause is enough to search without a warrant under the automobile exception. *See State v. Doohen,* 2006 ND 239, ¶ 10, 724 N.W.2d 158 ("Under the automobile exception, law

enforcement may search for illegal contraband without a warrant when probable cause exists."). " 'If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment ... permits police to search the vehicle without more.' " *Maryland v. Dyson,* 527 U.S. 465, 467, 119 S.Ct. 2013, 2014, 144 L.Ed.2d 442 (1999) (quoting *Pennsylvania v. Labron,* 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996)).

[¶ 19] Officer Vetter testified she and two other officers approached the camper and she could immediately smell a very strong odor of marijuana coming from the camper. Sergeant Hellman testified that when he came near the camper, he right away detected a very strong odor of raw marijuana. He testified he knew it would have to be a very large amount to give off that kind of odor through a wall. The combined force of this testimony is sufficient to demonstrate that police had probable cause to believe marijuana was in the camper. Because probable cause is enough to conduct a search under the automobile exception, we hold the search of Otto's camper was permissible under the automobile exception to the warrant requirement.

### B

[¶ 20] Because the search was justified under the automobile exception to the warrant requirement, it is unnecessary to consider whether the search was justified by the exigent circumstances exception to the warrant requirement.

### III

[¶ 21] Finally, Otto submits his own personal brief under N.D.R.App.P. 24, arguing Bismarck Police Department K–9 units improperly conducted a sweep of the sides of his residence, including the entry area. In making this argument, Otto fails

to cite to the record. A review of the record likewise fails to yield any reference to K–9 units at the scene. Without any reference to a K–9 search within the record, we cannot address this contention.

IV

[¶ 22]   We affirm.

[¶ 23]   GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.