**Corrected Opinion Filed 08/19/24 by Clerk of the Supreme Court**

IN THE SUPREME COURT
STATE OF NORTH DAKOTA

2024 ND 121

State of North Dakota,                          Plaintiff and Appellee

v.

Richard Jon Michael Sargent,              Defendant and Appellant

Nos. 20230351 & 20230353

Appeal from the District Court of Williams County, Northwest Judicial District, the Honorable Joshua B. Rustad, Judge.

AFFIRMED.

Opinion of the Court by Bahr, Justice, in which Chief Justice Jensen and Justices McEvers and Tufte joined. Justice Crothers filed an opinion dissenting.

Nathan K. Madden, Assistant State's Attorney, Williston, ND, for plaintiff and appellee; submitted on brief.

Samuel A. Gereszek, Grand Forks, ND, for defendant and appellant.

**Bahr, Justice.**

[¶1]   Richard Sargent appeals from two criminal judgments entered following his conditional pleas of guilty to 17 counts of unlawful possession of a firearm by a felon, 17 counts of theft of a firearm, and one count of theft of $500-$1000. Sargent's conditional plea reserved his right to appeal the district court's denial of his motion to suppress evidence. We conclude the traffic stop was valid, the officers had reasonable suspicion to extend the traffic stop, and the automobile exception allowed the officers to search the Nissan Armada on the trailer attached to the Chevrolet Tahoe driven by Sargent. We affirm.

I

[¶2]   Law enforcement received an anonymous tip "indicating that a 'Richie' would be towing another vehicle to Williston, ND and operating a Yukon SUV. The anonymous tipster indicated that 'Richie' was accompanied by a bearded heavier set male and had 'a lot of guns with them.'" "Based on the information received, law enforcement believed the suspect individual was [Sargent]." At 3:15 a.m. the next day, an officer observed a Chevrolet Tahoe SUV pulling a trailer carrying a Nissan Armada SUV. The Tahoe stopped past a stop sign, drove down a dirt road, and stopped past a second stop sign. The officer conducted a traffic stop of the Tahoe.

[¶3]   Sargent was the driver of the Tahoe. There was also a passenger in the Tahoe; an officer described the Tahoe's passenger as "a bearded heavier set male." When the officer attempted to contact the passenger by knocking on the window, the passenger would not look at the officer or acknowledge his presence. The officer went to the driver's side of the Tahoe and made contact with the driver, Sargent. The officer observed "that the front seat passenger appeared to be attempting to conceal his face with a low hat covering his eyes." The officer observed the passenger was not wearing a seatbelt and requested his identification. The passenger initially refused to give the officer his identification, but eventually complied.

1

[¶4]   The officer observed a handgun in the back seat of the Tahoe. The handgun was later determined to be fake. After initial contact with Sargent, officers placed Sargent in a police car. The officers determined Sargent was on probation, had a narcotics history, and did not have any active warrants. The officers also determined the passenger was on probation and had a narcotics history. Sargent told the officer they were headed to a shop in town. However, the Tahoe had already passed the shop, the route to the shop Sargent was taking was out of the way, and the route Sargent took was on a poorly maintained road.

[¶5]   The officers observed Sargent showed signs of "extreme nervousness." His hands were shaking, he could not be still, and his voice appeared to be in distress.

[¶6]   With Sargent still in the police car, officers requested a K-9 unit, which arrived "roughly 30 minutes after the stop." When the K-9 arrived, the K-9 sniffed both vehicles and alerted positively on the Tahoe, but not the towed Armada. Officers searched both vehicles. They found syringes in the Tahoe and firearms in the towed Armada. The officers arrested Sargent for felon in possession of firearms.

[¶7]   The State charged Sargent with 17 counts of unlawful possession of a firearm by a felon, 17 counts of theft of a firearm, and one count of theft of $500-$1000. Sargent moved to suppress the evidence gathered in the stop. The district court denied Sargent's motion to suppress evidence. Sargent entered conditional pleas of guilty to all the charges.

## II

[¶8]   When reviewing a motion to suppress, this Court:

> [D]efer[s] to the district court's findings of fact and resolve conflicts in testimony in favor of affirmance. We will affirm a district court's decision on a motion to suppress if there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence.

*State v. Casatelli*, 2021 ND 11, ¶ 8, 953 N.W.2d 656 (quoting *City of Bismarck v. Vagts*, 2019 ND 224, ¶ 4, 932 N.W.2d 523). "Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law." *Id.* (quoting *Vagts*, at ¶ 4).

III

[¶9]   Sargent argues "[t]he anonymous tip was not reliable, nor was it sufficient to establish reasonable articulable suspicion" to stop the Tahoe.

[¶10] "A law enforcement officer may initiate a traffic stop for an investigation if the officer has reasonable and articulable suspicion the driver has violated or is violating a law." *State v. Boger*, 2021 ND 152, ¶ 8, 963 N.W.2d 742. "Reasonable suspicion for a stop exists when a reasonable person in the officer's position would be justified by some objective manifestation to believe the defendant was, or was about to be, engaged in unlawful activity." *Id.* (quoting *State v. Corum*, 2003 ND 89, ¶ 10, 663 N.W.2d 151). "The severity of an observed traffic violation is of no consequence: 'It is well settled, traffic violations, even if considered common or minor, constitute prohibited conduct which provide officers with requisite suspicion for conducting investigatory stops.'" *State v. Ostby*, 2014 ND 180, ¶ 8, 853 N.W.2d 556 (quoting *Pesanti v. N.D. Dep't of Transp.*, 2013 ND 210, ¶ 9, 839 N.W.2d 851). Moreover, the reasonableness of a stop does not depend on the officer's motivations. *Id.* "[T]raffic violations, even if pretextual, provide a lawful basis to conduct an investigatory vehicle stop, and evidence discovered during those stops is admissible." *Ostby*, at ¶ 8.

[¶11] After reviewing the video of the stop, the district court found the footage established Sargent "failed to stop at the point nearest the intersection roadway before entering it," in violation of N.D.C.C. § 39-10-24. Thus, the court concluded "the traffic violation provided a lawful basis to conduct an investigatory stop." The court's finding Sargent violated N.D.C.C. § 39-10-24 is supported by competent evidence. The court's conclusion the traffic violation provided a lawful basis for the officer to stop the vehicle is in accordance with the law. Because the officer observed Sargent commit a traffic violation, the stop was

valid and the reliability of the anonymous tip is not relevant to whether the officer had reasonable suspicion to stop the Tahoe.

## IV

[¶12] Sargent argues the officers unreasonably extended the traffic stop when they called in a K-9 unit.

[¶13] "During a lawfully-initiated traffic stop, the officer can conduct activities 'related to traffic enforcement but not absolutely necessary to issuing a traffic ticket.'" *State v. Marsolek*, 2021 ND 175, ¶ 10, 964 N.W.2d 730 (quoting *State v. Vetter*, 2019 ND 138, ¶ 7, 927 N.W.2d 435). "The Fourth Amendment tolerates certain unrelated investigations that do not lengthen the roadside detention." *State v. Stands*, 2021 ND 46, ¶ 13, 956 N.W.2d 366 (cleaned up) (quoting *Rodriguez v. U.S.*, 575 U.S. 348, 354 (2015)). However, "*after* the completion of the traffic stop duties, if the officer continues the seizure, he violates the Fourth Amendment 'unless the officer has a reasonable suspicion for believing that criminal activity is afoot.'" *Vetter*, at ¶ 8 (quoting *State v. Fields*, 2003 ND 81, ¶ 10, 662 N.W.2d 242).

[¶14] In *Marsolek*, this Court explained when a traffic stop becomes an unconstitutional seizure:

> Traffic violations justify a stop by police officers. When an officer seizes an individual for a traffic violation, it justifies a police investigation of that violation. Because a routine traffic stop is relatively brief, it is more like a "Terry stop" than an arrest. The time it takes to complete the "mission" of the stop, to "address the traffic violation that warranted the stop and attend to related safety concerns," is a permissible length of time to detain someone. However, a stop may not extend longer than the amount of time necessary to effectuate the purpose of the traffic stop. An officer's seizure of a person is permitted only until the tasks tied to the traffic infraction are—or reasonably should have been—completed. A traffic stop prolonged beyond the "time reasonably required to complete the stop's mission" is unlawful. Unrelated inquiries are permitted during a stop as long as they do not prolong the stop and extend the time the individual is detained. A stop may be prolonged

Filed by Clerk of Supreme Court 08/19/24

only if the officer has reasonable suspicion to justify detaining the individual for inquiries unrelated to the stop.

2021 ND 175, ¶ 9 (quoting *Vetter*, 2019 ND 138, ¶ 6).

[¶15] The district court found multiple factors gave the officers reasonable suspicion to extend the stop. The factors identified by the court include Sargent "appearing nervous, his criminal history, the fact that [Sargent] was on probation, and conflicting information provided in the interactions with the [vehicle] occupants." "In addition," the court found, "law enforcement was able to corroborate certain aspects of the anonymous informant's tip from the night before including a vehicle towing another vehicle, and a name and information law enforcement was able to discern was [Sargent]." It then concluded "the continued detention did not violate the Fourth Amendment, as the seizure was not justified solely by the stop sign issue, but by that additional reasonable suspicion, and the continued detention was to address that suspicion."

[¶16] This Court applies "an objective standard to determine whether an officer has reasonable suspicion." *Stands*, 2021 ND 46, ¶ 17.

> [T]his Court looks at the totality of the circumstances, applies an objective standard, and takes into account the inferences and deductions that an investigating officer would make that may elude a layperson. The question is whether a reasonable person in the officer's position would be justified by some objective manifestation to suspect the defendant was, or was about to be, engaged in unlawful activity.

*Id*. (quoting *Vetter*, 2019 ND 138, ¶ 9). Reasonable suspicion is not easily reduced to a methodical set of legal rules, but it does require more than a "mere hunch." *Fields*, 2003 ND 81, ¶ 13.

[¶17] One factor considered by the officers is Sargent appeared extremely nervous. "An individual's nervousness during a traffic stop 'is a pertinent factor in determining reasonable suspicion.'" *State v. Adan*, 2016 ND 215, ¶ 15, 886 N.W.2d 841 (quoting *State v. Heitzmann*, 2001 ND 136, ¶ 15, 632 N.W.2d 1). "However, nervousness alone is insufficient to establish a reasonable suspicion."

*Id.* Moreover, the passenger was evasive. He refused to respond to the officer, appeared to be attempting to conceal his face, and initially refused to give his identification to the officer. "Nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Fields*, 2003 ND 81, ¶ 19 (quoting *Heitzmann*, at ¶ 15).

[¶18] The officers also considered that Sargent and the passenger had criminal histories and were on probation. An officer's knowledge of an individual's criminal history "is a legitimate factor to be taken into account in determining whether there is a sufficient quantum of suspicion. . . ." *Fields*, 2003 ND 81, ¶15 (quoting 4 Wayne R. LaFave, *Search and Seizure* § 9.4(f), 192 (3d ed. 1996)). "Although insufficient alone, a person's criminal history can support a finding of reasonable suspicion." *State v. Wills*, 2019 ND 176, ¶ 16, 930 N.W.2d 77. Here, both Sargent and the passenger had criminal histories and were on probation. The officers appropriately considered Sargent's nervousness, the passenger's evasive behavior, and their criminal histories and probationary statuses in combination with other factors when deciding to investigate further whether Sargent was involved in unlawful activity.

[¶19] One of the other factors the officers considered was Sargent's explanation of where he was going. "When there are inconsistencies about the details of a trip, these inconsistencies may be used in forming a reasonable suspicion." *Adan*, 2016 ND 215, ¶ 19; *see also Fields*, 2003 ND 81, ¶ 20 (stating "unusual or suspicious travel plans may give rise to reasonable suspicion"). Sargent's travel plan was inconsistent because he claimed he was traveling to a shop he already passed. His route was also suspicious, it being out of the way and on a poorly maintained road. Moreover, the time of day is relevant, particularly when considering Sargent's explanation for their trip. "The lateness of the hour is [a] fact that may raise the level of suspicion." *Fields*, at ¶ 20 (quoting *U.S. v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993)).

[¶20] The anonymous tip was another factor the officers considered. *State v. Miller*, 510 N.W.2d 638, 641-42 (N.D. 1994) (explaining corroborated anonymous tips may raise a reasonable suspicion). The officers corroborated many aspects of the anonymous informant's tip, including a vehicle was towing a trailer with

another vehicle, the general location, there was a driver and a passenger, the driver's name, and the description of the passenger. *See State v. Neis*, 469 N.W.2d 568, 570 (N.D. 1991) ("We have held before that an anonymous tip, together with the officer's own observations, is sufficient for a reasonable suspicion."); *cf. State v. Thordarson*, 440 N.W.2d 510, 512 (N.D. 1989) (concluding a reasonable suspicion stop is appropriate where an anonymous tip is bolstered by an officer's own senses).

[¶21] To establish reasonable suspicion, an officer need not rule out all potential innocent reasons for the behavior in question. *State v. Bolme*, 2020 ND 255, ¶ 8, 952 N.W.2d 75. Moreover, an officer does not have to observe illegal conduct to have reasonable suspicion. In analyzing whether reasonable suspicion existed, courts may consider "innocent conduct," *i.e.*, conduct that "is not inherently suspicious." *Adan*, 2016 ND 215, ¶ 27. That is because courts do "not view each fact in isolation; rather, [they] look at the totality of the circumstances to determine if reasonable, articulable suspicion exists." *Id.* "Although no one fact before the court may by itself support reasonable suspicion, several taken together can acquire as a whole a significance they lack when taken individually." *State v. $127,930 United States Currency*, 2017 ND 282, ¶ 17, 904 N.W.2d 307.

[¶22] Here, the officers articulated many factors that gave them reasonable suspicion Sargent was engaged in unlawful activity. Considering the totality of the circumstances, we conclude there was reasonable and articulable suspicion that Sargent was engaged in criminal activity and that his continued detention until a K-9 unit arrived was lawful.

V

[¶23] Sargent argues the officers only had probable cause to search the Tahoe because the officers' probable cause did not extend to the towed Armada.

[¶24] This Court has explained:

> The Fourth Amendment of the United States Constitution and Article I, Section 8 of the North Dakota Constitution protect

individuals from unreasonable searches and seizures. Where an individual has a reasonable expectation of privacy in an area, the government must obtain a search warrant unless the search falls within a recognized exception to the warrant requirement. If an exception does not apply to the search, evidence discovered in violation of the Fourth Amendment must be suppressed under the exclusionary rule. The burden is on the State to prove a warrantless search falls within an exception to the warrant requirement.

*State v. Lelm*, 2021 ND 118, ¶ 9, 962 N.W.2d 419 (cleaned up).

[¶25] One exception to the warrant requirement is the automobile exception. "Under the automobile exception, law enforcement may search for illegal contraband without a warrant when probable cause exists." *State v. Lark*, 2017 ND 251, ¶ 16, 902 N.W.2d 739. The district court found "there was clearly probable cause to search the [Tahoe], as the K-9 alert gave probable cause to search the [Tahoe.]" Sargent does not challenge this conclusion. Thus, the issue is whether the automobile exception extends to the Armada on the trailer towed by the Tahoe. We conclude the automobile exception permitted the officers to search the towed Armada.

[¶26] In *State v. Otto*, 2013 ND 239, 840 N.W.2d 589, this Court held the automobile exception applied to a camper. In *Otto*, the "camper had the landing gear down, power cords were plugged in, and no vehicle was hooked up to it." *Id.* at ¶ 16. In reaching our decision, we noted there are "two different 'automobile exception' theories—mobility and a lesser expectation of privacy." *Id.* (quoting *State v. Garrett*, 1998 ND 173, ¶ 23, 584 N.W.2d 502). Although the "camper was not mobile while the officers were present, it was capable of being mobilized within a very short time." *Id.* Furthermore, the "camper was in a commercial parking lot" making the case "more akin to an automobile search than to the search of a permanent residence." *Id.* at ¶ 17. Both automobile exception theories support application of the exception here. The Armada was on a trailer being towed by the Tahoe. Thus, it was mobile and could quickly be moved. The Armada was also on a public road, meaning there was a lesser expectation of privacy.

8

[¶27] Case law in other jurisdictions support our conclusion the automobile exception extends to the towed vehicle. For example, in *State v. Finlay*, 307 P.3d 518 (Or. App. 2013), the Oregon Court of Appeals held the automobile exception extended to the warrantless search of a trailer attached to the defendant's pickup. In reaching its conclusion, the court wrote:

> [T]he exigency that permits the police to conduct a warrantless search of a mobile vehicle arises from the fact that the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought. That justification applies equally in the case of a trailer, or any container, that is attached to a vehicle. That is so because, if the vehicle quickly moves out of the locality or jurisdiction, so too will the container attached to it.

*Id.* at 524-25 (cleaned up).

[¶28] The Kansas Supreme Court held probable cause to search a truck was sufficient to establish probable cause to search the entire traveling unit, including the fifth-wheel camper being towed by the truck. *State v. Crudo*, 541 P.3d 67 (Kan. 2024). In *Crudo*, "officers noticed the smell of raw marijuana coming from the cab of the truck." *Id.* at 72. "Officers did not observe any smell of marijuana coming from the fifth-wheel trailer[.]" *Id.* "Nonetheless, the officers did search the trailer." *Id.* The court explained, "The trailer was being towed down the highway and was sufficiently mobile to satisfy the exigency requirement." *Id.* The court then concluded "that probable cause to search a stopped vehicle does not have to be 'localized' and thus limited to one particular area or part of the travelling unit. That is, under the automobile exception, once probable cause to search is established, it extends 'bumper-to-bumper' to the entire travelling unit." *Id.* at 73.

[¶29] In *State v. Overbey*, 2010 SD 78, 790 N.W.2d 35, the South Dakota Supreme Court held a drug-dog's alert to the cab of the pickup truck justified the police searching the camper towed by the pickup truck. The court wrote, "The fifth-wheel camper was being towed by the pickup in the same fashion in which a semi-tractor tows a trailer." *Id.* at ¶ 23. The court went on to say, "The camper

was a part of the pickup and subject to search as long as the motor vehicle exception was satisfied as to any part of the pickup or camper." *Id*.

[¶30] We hold the officers had probable cause to search the Armada on the trailer towed by the Tahoe driven by Sargent.

VI

[¶31] We hold the district court did not err in denying Sargent's motion to suppress evidence. We affirm.

[¶32] Jon J. Jensen, C.J.
       Lisa Fair McEvers
       Jerod E. Tufte
       Douglas A. Bahr

**Crothers, J., dissenting.**

[¶33] I agree with much of what the majority has written but ultimately dissent because of inadequate findings by the district court. I also write separately because some of the suspicion factors here raise concerns like they did in *State v. Anderson*, 2024 ND 115 (Crothers, J., dissenting).

[¶34] The Fourth Amendment is not violated if law enforcement promptly completes the mission of the stop and does not, without new reasonable articulable suspicion of unrelated illegal conduct, prolong the stop to engage in new investigations unrelated to the reason for the stop. Majority opinion, ¶ 13; *Anderson*, 2024 ND 115, ¶ 8. "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). Reasonable suspicion to extend a stop requires "a particularized and objective" basis to believe another crime is afoot. *United States v. Glenn*, 931 F.3d 424, 429 (5th Cir. 2019). The Fourth Amendment requires "'more than an inchoate and unparticularized suspicion or hunch.'" *Id.* (quoting *United States v. Chavez*, 281 F.3d 479, 485 (5th Cir. 2002)). Courts must consider "the sum of the circumstances as a 'laminated total' and not by separately assessing the individual facts." *State v. $127,930 United States*

*Currency*, 2017 ND 282, ¶ 17, 904 N.W.2d 307 (quoting *State v. Lark*, 2017 ND 251, ¶ 19, 902 N.W.2d 739); *see also United States v. Maltais*, 403 F.3d 550, 554 (8th Cir. 2005) ("Whether the particular facts known to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances.").

[¶35] This case has similar unparticularized and inchoate suspicion like that in *Anderson*, where the initial stop was predicated on a lawful traffic stop and officers observed questionable behavior, discovered criminal history, and thought the time of night was significant. *Anderson*, 2024 ND 115, ¶¶ 2-3. In *Anderson*, viewed together or individually, that conduct fell short of reasonable articulable suspicion to extend the traffic stop. *Id*. at ¶ 54, (Crothers, J., dissenting). Here, shortly after the traffic stop law enforcement had much more than the information present in *Anderson*. They verified parts of a tip they received that two individuals would be traveling through Williston with "a lot of guns." Majority opinion, ¶ 2. They observed Sargent driving a vehicle consistent with the tip. Majority opinion, ¶ 2. During the stop the officers observed Sargent and the passenger displaying *extreme* nervousness and a gun in the backseat (later determined to be fake). Majority opinion, ¶¶ 4-5. The passenger initially attempted to conceal his appearance and refused to identify himself or provide evidence of identification. Majority opinion, ¶ 3. Upon learning the driver's and passenger's identity, officers discovered they both were on probation. Majority opinion, ¶ 4.

[¶36] To extend a traffic stop, the Fourth Amendment requires officers to have objective particularized suspicion that another crime is afoot. *Glenn*, 931 F.3d at 429. Even the extension of a traffic stop based on fresh reasonable articulable suspicion of different criminal activity has limits. *See id*. (stating a stop may only be extended when there is particularized suspicion of another crime and the extension may only last so long as it takes to dispel that newly-formed suspicion). Thus, the newly-formed reasonable articulable suspicion allows timely investigation into the new suspected criminal activity for the duration necessary for that investigation. As the Eighth Circuit Court of Appeals has explained: "During an investigative stop, officers should 'employ the least intrusive means of detention and investigation, in terms of scope and duration,

11

that are reasonably necessary to achieve the purpose' of the temporary seizure."
*Maltais*, 403 F.3d at 556 (quoting *United States v. Navarrete-Barron*, 192 F.3d 786, 790 (8th Cir. 1999)). Newly-formed suspicion does not give officers a day-pass to hold a suspect.

[¶37] Here, the justification for the traffic stop was to issue a traffic citation for a violation related to an improper stop at an intersection. As the majority acknowledges, after officers' initial contact with Sargent, they detained him and placed him in their patrol car. Majority opinion, ¶ 4. Nobody here argues, and the district court did not find, that Sargent was arrested or that probable cause to arrest existed during the period officers seized Sargent. Thirty minutes after the stop, while Sargent was detained in the patrol car, a K-9 unit arrived on scene and positively alerted for drugs, which provided the justification for the search giving rise to these charges.

[¶38] Our standard on appeal of a motion to suppress is to give deference to the district court's findings of fact and review de novo the court's legal application. Majority opinion, ¶ 8. The district court in this case failed to make findings establishing what the officers did during that full 30 minutes to "complete the mission" of the extended stop, or whether they simply held Sargent (and his passenger) until arrival of the K-9 unit due to the suspicion accumulated during the stop. Without those findings we have no factual determination to consider, and we cannot fulfill our duty to make the legal determination, whether Sargent was lawfully seized after the traffic stop. *See Anderson*, 2024 ND 115, ¶ 8 ("[T]his Court has 'rejected a *de minimis* time exception for extending a traffic stop' for activity outside the mission of the stop without reasonable suspicion to support the expanded scope. *Marsolek*, 2021 ND 175, ¶ 12, [964 N.W.2d 730]; *see also State v. Karst*, 509 P.3d 1148, 1156 (Idaho 2022) (concluding under *Rodriguez* that a nineteen-second detour to request a drug-dog unit violated the Fourth Amendment).").

[¶39] I would retain jurisdiction under N.D.R.App.P. 35(a)(3)(B) and remand for the district court's further analysis of the legality of the extended stop. *See State v. Juntunen*, 2014 ND 86, ¶ 3, 845 N.W.2d 325 ("We cannot properly review a

decision, however, if the district court fails to make adequate findings explaining the basis for its ultimate conclusion.").

[¶40]  Daniel J. Crothers