# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2026 ND 45

State of North Dakota,

Plaintiff and Appellee

v.

Antonio Eugenio Medina,

Defendant and Appellant

### No. 20250178

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Kristi P. Venhuizen, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Madison Schoenberg (argued), under the Rule on Limited Practice of Law by Law Students, and Christopher L. Skjerven (appeared), Assistant State's Attorney, Grand Forks, ND, for plaintiff and appellee.

Kiara C. Kraus-Parr, Grand Forks, for defendant and appellant.

**Crothers, Justice.**

[¶1]   Antonio Eugenio Medina appeals from an amended criminal judgment, entered upon a conditional plea of guilty, reserving the right to appeal a district court order denying his motion to suppress evidence. Medina argues law enforcement's warrantless search of his vehicle violated the Fourth Amendment because no exception to the warrant requirement applies and the search lacked probable cause. The State argues the automobile exception to the warrant requirement applies and probable cause existed to execute the search. We affirm the amended judgment.

I

[¶2]   On September 20, 2023, Police Officer White responded to a house fire in Grand Forks, North Dakota. While White gathered information from the homeowner, he observed Medina arrive on scene and act "suspiciously." White testified Medina did not seem concerned about the fire, appeared evasive, and tried to distance himself from the officer. Medina walked to the garage behind the house and left the scene in his red Ford Explorer. He later returned to the scene on foot.

[¶3]   Officers located Medina's unlocked and unoccupied vehicle in a commercial parking lot four blocks away. Through the window, White observed keys on the driver's side floor. The officers observed a cut straw with white residue on the passenger floor. Officers conducted a warrantless search of the vehicle, and seized the straw, an electronic scale with residue, and small baggies. The residue tested positive for cocaine.

[¶4]   Medina was charged with possession of a controlled substance, in violation of N.D.C.C. § 19-03.1-23(7)(a), a class A misdemeanor and possession of drug paraphernalia, in violation of N.D.C.C. § 19-03.4-03(2), a class A misdemeanor. Medina filed a motion to suppress evidence. After a hearing, the district court denied the motion to suppress evidence, finding "the automobile exception authorized warrantless search because law enforcement had probable

1

cause to believe the vehicle contained evidence of a crime," the "totality of the circumstances supports the finding of probable cause," and the "plain view and exigent circumstances exceptions to the warrant requirement are subsumed in the automobile exception analysis."

[¶5] Medina entered a conditional guilty plea on the record, reserving the right to appeal the district court's denial of his motion to suppress. He was sentenced to serve 12 days' imprisonment, concurrent. Judgment was entered. Medina appealed the criminal judgment. *State v. Medina*, 2025 ND 234, 29 N.W.3d 868. The criminal judgment did not specify Medina's plea was conditional as required under N.D.R.Crim.P. 11(a)(2) ("The resulting judgment must specify it is conditional."). *Id.* ¶ 6. We remanded with instructions for the district court to correct the criminal judgment to accurately reflect the proceedings. *Id.* ¶¶ 8-9.

[¶6] Following remand, Medina, Medina's attorney, and the State signed and filed a "Written Consent to Conditional Plea Under N.D.R.Crim.P. 11." *See* N.D.R.Crim.P. 11(a)(2) ("The defendant, any defendant's attorney, and the prosecuting attorney must consent in writing to a conditional plea filed with the court."). The district court entered an amended judgment specifying Medina's plea was conditional "under N.D.R.Crim.P. 11(a)(2) allowing [Medina] to appeal the Order Denying Motion to Suppress dated January 15, 2025." We now consider the merits.

II

[¶7] "In reviewing the district court's decision on a motion to suppress, we defer to the district court's findings of fact and resolve conflicts in testimony in favor of affirmance." *State v. Fuglesten*, 2024 ND 74, ¶ 8, 5 N.W.3d 809 (citation omitted). "This Court will affirm the decision on a motion to suppress on appeal if there is sufficient competent evidence fairly capable of supporting the court's findings, and the decision is not contrary to the manifest weight of the evidence." *Id.* (cleaned up). "Whether law enforcement violated constitutional prohibitions against unreasonable search and seizure is a question of law." *Id.* (citation omitted).

2

[¶8]   "The Fourth Amendment of the United States Constitution and Art. I, § 8, of the North Dakota Constitution protect individuals against unreasonable searches and seizures." *Fuglesten*, 2024 ND 74, ¶ 9 (citations omitted). "When an individual reasonably expects privacy in an area, the government, under the Fourth Amendment, must obtain a search warrant unless the intrusion falls within a recognized exception to the warrant requirement." *Id.* (citations omitted). "One exception to the warrant requirement is the automobile exception." *State v. Grensteiner*, 2024 ND 218, ¶ 7, 14 N.W.3d 587 (citation omitted). "Under the automobile exception, law enforcement may search for illegal contraband without a warrant when probable cause exists." *Id.* (citation omitted).

[¶9]   "Evidence discovered during a warrantless search when no exception exists must be suppressed under the exclusionary rule." *Fuglesten*, 2024 ND 74, ¶ 10 (citations omitted). "In a motion to suppress, a person alleging a Fourth Amendment violation has an initial burden of establishing a prima facie case of an illegal search or seizure." *Id.* (citation omitted). "However, after the defendant has made a prima facie case, the burden of persuasion is shifted to the State to justify its actions." *Id.* (citations omitted).

III

[¶10] The parties do not dispute officers conducted a search, the Fourth Amendment applies, and the officers did not have a search warrant. Medina argues the automobile exception does not apply because his vehicle was not "readily mobile." He also argues exigent circumstances did not exist. He contends "law enforcement had effectively eliminated any meaningful mobility of [his] vehicle" because the vehicle was parked and unoccupied in a parking lot approximately four blocks from the scene of the fire and "had eliminated any reasonable possibility of him accessing [the] vehicle because of their continued surveillance." He argues "law enforcement had secured both their suspect and control over the vehicle's location" and therefore, the "vehicle was not readily mobile within the meaning of [*Maryland v. Dyson*, 527 U.S. 465 (1999) and *Coolidge v. New Hampshire*, 403 U.S. 443 (1971).]"

[¶11] In *Dyson*, the United States Supreme Court explained, "the automobile exception does not have a separate exigency requirement[.]" 527 U.S. at 467. "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment permits police to search the vehicle without more." *Id.* (cleaned up). Medina argues, under *Dyson*, the vehicle must be "readily mobile." In *Coolidge*, 403 U.S. at 461, the United States Supreme Court emphasized: "The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." "In *Coolidge* . . . a search of an automobile at a station house after an arrest had been made, and while the vehicle was in close custody, was held unconstitutional[.]" *State v. Matthews*, 216 N.W.2d 90, 101 (N.D. 1974). *Coolidge* concluded because there was no exigency, the automobile exception did not apply. 403 U.S. at 464. *Dyson* clarified exigency outside the readily mobile application of the vehicle is not required. 527 U.S. at 467. Medina's reliance on these cases is misplaced.

[¶12] This Court rejected a similar argument in *State v. Zwicke*, 2009 ND 129, 767 N.W.2d 869. Zwicke argued the automobile exception could not apply because no exigent circumstances existed at the time of the search. *Id.* ¶ 11. Zwicke relied on *State v. Meadows*, 206 N.W.2d 328, 332 (N.D. 1977), where this Court held a warrantless search of a vehicle under the automobile exception is justified only where there are exigent circumstances, in addition to probable cause, which require immediate action. This Court clarified, that since the *Meadows* decision, *Dyson* was decided, holding "there need not exist exigent circumstances beyond the mobility of the vehicle and probable cause to believe the car contains contraband." *Zwicke*, ¶ 11 (citing *Dyson*, 527 U.S. at 467). The Court further clarified, in "*Meadows,* this Court did note that mobility of the vehicle was enough of an exigent circumstance to justify a search under the automobile exception. *See Meadows,* 260 N.W.2d at 333 (holding a warrantless automobile search is justified if the vehicle is easily movable, the occupants are alerted to the officer's activity, and the officer has probable cause to believe the car contains seizable items)." *Zwicke*, ¶ 11. "Such circumstances trigger the automobile exception because of the distinct likelihood that the vehicle or seizable items may never be found again if a warrant must be obtained." *Id.* (citing *Chambers v. Maroney*, 399 U.S. 42, 51 (1970)). "Nevertheless, to the extent that *Meadows* can be

read to require something more than mobility for exigent circumstances, we overrule that part of our decision in that case." *Id.*

[¶13] In *State v. Sargent*, 2024 ND 121, ¶ 26, 8 N.W.3d 278, a majority of this Court concluded a vehicle on a trailer being towed by another vehicle was subject to the automobile exception because "it was mobile and could quickly be moved" and it "was also on a public road, meaning there was a lesser expectation of privacy." In *State v. Otto*, 2013 ND 239, ¶ 16, 840 N.W.2d 589, this Court concluded a camper with "the landing gear down, power cords [] plugged in, and no vehicle [] hooked up to it" was subject to the automobile exception because "[a]lthough the camper was not readily mobile by the turn of an ignition key" the vehicle had "the capability to be quickly moved" and a "lesser expectation of privacy." *Id.* ¶¶ 16, 13. This Court reasoned, "[al]though his camper was not mobile while the officers were present, it was capable of being mobilized within a very short time." *Id.* ¶ 16. The Court further noted "[t]he fact that Otto's camper was in a commercial parking lot makes this case more akin to an automobile search than to the search of a permanent residence." *Id.* ¶ 17. "[T]he very function of the automobile exception is to ensure that law enforcement officials need not expend resources to secure a readily mobile automobile during the period of time required to obtain a search warrant." *Id.* ¶ 15 (quoting *United States v. Navas*, 597 F.3d 492, 499-500 (2d Cir. 2010)).

[¶14] In this case, the district court found the vehicle was located in a parking lot approximately four blocks from the fire. The court further found, after confirming the vehicle was registered to Medina, law enforcement approached the vehicle and through the windows "could see the keys on the driver's side floor." The court found the vehicle was "unlocked and unoccupied."

[¶15] The vehicle was in a commercial parking lot. Medina had very recently driven the vehicle and returned to the house fire on foot. Although the vehicle was not mobile while the officers were present, it was capable of being mobilized by Medina or anyone else within a very short time. *See Otto*, 2013 ND 239, ¶ 16. At the time of the search, the vehicle had "the capability to be quickly moved" and a "lesser expectation of privacy." *See id.* ¶¶ 16, 13. The automobile exception to the search warrant requirement applies.

5

[¶16] Medina argues the district court's finding of probable cause was based on insufficient evidence. Medina argues his conduct may have justified further investigation under reasonable suspicion but did not rise to probable cause. We disagree.

[¶17] "Probable cause to search exists if it is established that certain identifiable objects are probably connected with criminal activity and are probably to be found at the present time at an identifiable place." *State v. Doohen*, 2006 ND 239, ¶ 10, 724 N.W.2d 158 (quoting *Roth v. State*, 2006 ND 106, ¶ 13, 713 N.W.2d 513). "If the search of an automobile without warrant is made upon probable cause, based upon a reasonable belief arising out of the circumstances known to the officer—that the automobile contains articles which are subject to seizure—the search is valid." *Id.* (cleaned up).

[¶18] "A police officer may draw inferences based on his own experience in deciding whether probable cause exists." *Doohen*, 2006 ND 239, ¶ 11 (cleaned up) (quoting *Ornelas v. United States*, 517 U.S. 690, 700 (1996)). "Probable cause demands not that an officer be sure or certain but only that the facts available to a reasonably cautious man would warrant a belief that certain items may be contraband or stolen property or useful as evidence of a crime." *Id.* ¶ 12 (quoting *United States v. Weinbender*, 109 F.3d 1327, 1330 (8th Cir. 1997)). "When determining whether there is probable cause, the evidence should not be considered individually, but as a collective whole." *State v. Lark*, 2017 ND 251, ¶ 19, 902 N.W.2d 739 (quoting *Doohen*, ¶ 13).

[¶19] The district court explained its findings on probable cause:

> The totality of the circumstances supports the finding of probable cause. Medina's behavior at the scene supported Officer White's belief Medina was being evasive—his actions indicated he was trying to hide something. Once Medina's vehicle was located, the officers observed a cut orange straw with residue and a box for a digital scale in plain view on the floor pan of Medina's vehicle.

[¶20] The district court described Medina's behavior:

Officer White noticed that Medina's behavior seemed odd in that he did not seem particularly concerned that [the] house had been on fire. Medina seemed evasive, walking away from Officer White as if trying to put distance between them. At one point, while walking to the backyard, Medina walked through the neighbor's yard, looked back at Officer White, and moved quickly away from him—disappearing around the corner of the garage.

Officer White overheard Medina and [his girlfriend] having a conversation about cameras on the back of the house that may have captured footage of the source of the fire. One of them stated the cameras were dead and the other stated they were unhooked. It was Officer White's understanding the cameras were in the garage located behind the east end of the house. Officer White was seeking to establish whether the cameras had been working at the time of the fire. His purpose for doing this was to assist the fire marshal. Officer White followed Medina to the back of the house. Medina returned to the front of the house indicating he needed to get keys for his vehicle and the garage. Medina spoke to [the girlfriend] about obtaining these keys and then asked Officer White for a bottle of water. [The girlfriend] and Corporal Steffan entered the house to look for the keys and Officer White stepped inside to retrieve the requested bottle of water for Medina. Upon exiting the house, Officer White found that Medina was already inside the garage. Officer White handed Medina the bottle of water, which Medina never drank. Officer White was suspicious and felt Medina was not being forthright about needing his keys as he already had access to the garage. Officer White also thought the request for the bottle of water appeared to be a tactic to place distance between the two of them.

When Officer White gave Medina the bottle of water, he saw him exit the garage with an object in his hands. Officer White was unable to decipher what the object was. Medina then stated he needed a computer to access the camera footage, which the officer thought was another conflicting statement as earlier it was stated the cameras were either dead or unhooked. Now, by stating he needed a computer to access the camera footage, Medina was indicating the cameras had been working. Medina quickly exited the garage and went to his vehicle, a red Ford Explorer, parked on a parking pad to the immediate east of the garage. In what appeared to be an attempt to conceal something from Officer White, Medina kept his back to Officer White while walking from the garage to his

7

vehicle and while then entering the vehicle. Officer White suspected Medina may be attempting to hide something illegal, possibly narcotics.

 . . . [U]pon returning to the house, Officer White noticed that Medina was no longer there. Officer White and Corporal Steffen returned to the back of the house where they overheard one of the firefighters say they saw Medina leave in his vehicle through the alleyway, running over one of the fire hoses while doing so. Officer White spoke with Officer Spicer who was controlling traffic to the south of their location. Officer Spicer stated he saw Medina leave in his vehicle and return to the scene on foot. A short time later, Officer White found Medina back on the scene. Based upon Officer White's observations, Medina's demeanor appeared to have calmed significantly when he returned to the house.

    After Medina returned on scene, the fire marshal said he would like to go into the garage because there was an extension cord leading into the garage. Officer White spoke with [the girlfriend] and Medina, informing them the fire marshal would like to enter the garage. Medina informed Officer White they did not need to go inside the garage, it was locked, and he would need to get the keys. Medina was informed that because this was a fire investigation they would force entry into the garage if they were not allowed inside. Medina then allowed them to enter the garage. The fire department made entry into the garage and did not see anything of importance. After this, Officer White and the other law enforcement officers cleared the scene. However, given Medina's behavior and the fact that the red Ford Explorer vanished from the scene in the middle of the investigation, law enforcement decided to look for the vehicle in the immediate area.

[¶21] The district court found: "Through the vehicle windows, Officer White could see the keys on the driver's side floor pan, a cut straw with white powdery residue inside of it, as well as a box for an electronic scale. Based on what was observed, officers conducted a probable cause search of the vehicle which was unlocked and unoccupied." The court's findings are supported by the testimony, photographs, and body camera videos. We conclude sufficient competent evidence supports the court's factual findings.

[¶22] Medina argues the district court misapplied the plain view doctrine because law enforcement did not have a lawful right of access to the object. "An officer with a plain view of contraband which gives rise to probable cause is not immunized from the warrant requirement unless the search falls within one of the exceptions to the requirement." *State v. Gregg*, 2000 ND 154, ¶ 30, 615 N.W.2d 515. The district court found: "The officers were lawfully in a position from which they could look inside the vehicle where they saw the straw and box for a scale." Law enforcement viewed the scale and straw from a public parking lot. Law enforcement had the lawful right of access to the parking lot.

[¶23] Medina also argues the incriminating nature of a straw and scale is not immediately apparent. The district court found: "In this case, the officers identified the straw as paraphernalia based on the white residue. This straw was located near a box for a digital scale which is another common item of drug paraphernalia." The court found: "The items observed in the vehicle, in conjunction with Medina's behavior at the house, provided probable cause to believe the vehicle contained illegal contraband." The incriminating nature of the straw and scale was immediately apparent to the officers.

[¶24] The district court's finding of probable cause, based on the plain view of the straw and scale, and Medina's suspicious behavior, is supported by the evidence. Based on these circumstances, law enforcement had probable cause to believe the vehicle contained contraband.

V

[¶25] The district court's denial of Medina's motion to suppress the evidence found in his vehicle is supported by sufficient competent evidence and is not contrary to the manifest weight of the evidence. Under the automobile exception, law enforcement may search for illegal contraband without a warrant when probable cause exists. *See Gregg*, 2000 ND 154, ¶ 35 (concluding "search was valid, based on the syringe in plain view opening up further search of Gregg's car" and "the officers had sufficient cause to believe the car contained additional contraband[,]" therefore "the evidence found in the front passenger area of Gregg's car is also admissible under the automobile exception to the warrant

9

requirement"). The search was supported by probable cause and valid under the automobile exception to the search warrant requirement.

[¶26] We affirm the amended judgment.

[¶27] Lisa Fair McEvers, C.J.
Daniel J. Crothers
Jerod E. Tufte
Jon J. Jensen
Douglas A. Bahr